**Abram F. Doremus, Edward D. Ellis and Merrill Spalding v. Mary G. Hennessy.**

1. CONSPIRACY.—*Civil Actions for Damages.*—A civil action will not lie for a mere conspiracy. It is the damage done in pursuance of the conspiracy which gives the right of action.

2. SAME—*As a Cause for Civil Actions.*—The essence of a conspiracy, so far as it justifies a civil action for damages, is a concert or combination to defraud, or to cause other injury to persons or property which, because of acts done in pursuance of such conspiracy, actually results

in damage to the person or property of the person injured or defrauded.

3. SAME—*Not the Gravamen of a Civil Action—Aggravation of Damages—Joint Liability.*—In civil actions the conspiracy is not the gravamen of the charge, but may be pleaded and proved in aggravation of the wrong of which the plaintiff complains, and as enabling him to recover against all the conspirators as joint tort feasors.

4. UNLAWFUL COMBINATIONS—*Distinguished from Honest Competition.*—Honest competition in business is always permissible, and it is not easy to draw the line between acts which are but lawful competition and those which are unlawful, because designed to result and actually resulting in an injury to the person or property of a rival, but the line of demarkation is no more difficult of ascertainment than as to the lawfulness or unlawfulness of many other matters of which the law takes note.

5. BOYCOTTING—*Action Lies for.*—An action may be maintained for the malicious interference with the business of another, his occupation, profession, or way of obtaining a livelihood. It is not necessary to the maintenance of such action that there should be any moral turpitude in the act complained of. It lies whenever a damage is occasioned by the wrong done.

6. TRESPASS ON THE CASE—*Nature of the Action.*—The action of trespass on the case is founded upon the justice and conscience of the case, and is in the nature of a bill in equity. It is a universal remedy given for all wrongs and injuries without force.

7. SAME—*Where it Lies.*—When any consequential damage arises, which could not be foreseen and provided for in the ordinary course of justice, the party injured may bring an action on the case upon a declaration framed according to the peculiar circumstances of his own particular grievance.

8. SAME—*Where it Lies for a Conspiracy.*—Whenever, in pursuance of an unlawful combination to defame or injure another in his particular avocation or business, means are employed which tend to effectuate, and to a greater or less extent accomplish, the object of the conspirators, an action of trespass on the case will lie.

9. PUNITIVE DAMAGES—*When to be Imposed.*—In actions where the gist of the case is the damage that has resulted from the malicious acts of the defendant, punitive damages may be imposed, and the amount of such damages is, within wide limits, a matter of discretion for the jury.

**Trespass on the Case,** for a conspiracy. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed January 22, 1896.

Doremus v. Hennessy.

HOWARD HENDERSON, attorney for appellants; FRANCIS W. WALKER, of counsel.

If an act is done by one alone, which is no cause of action, a like act is not rendered actionable by being done in pursuance of a conspiracy. In an action on the case in the nature of a conspiracy, the gist of the action is not the conspiracy (as it is in an indictment, and was in the old writ of conspiracy), but the damage done to the plaintiff. Wellington v. Small, 3 Cush. 145.

A conspiracy is an agreement between two or more persons to do an unlawful act; if the act to be done is not unlawful, then the agreement or conspiracy is not a conspiracy in law. Payne v. W. & A. R. Co., 13 Lea (Tenn.) 508.

Competition frequently engenders not only a spirit of rivalry but enmity, and if the motive influencing every business transaction that may result in injury or inconvenience to a business rival was made the test of its legality, litigation and strife would be vexatiously and unnecessarily increased, and the sale and exchange of commodities very much hindered. Chambers et al. v. Baldwin, 91 Ky. 122.

Malicious motives make a bad act worse, but they can not make that wrong which in its own essence is lawful. Any transaction which would be lawful and proper if the parties are friends can not be made the foundation of an action merely because they happen to be enemies. As long as a man keeps himself within the law, by doing no act which violates it, we must leave his motives to Him who searches the heart. Jenkins v. Fowler, 24 Pa. St. 308; Stevenson v. Newham, 76 E. C. L. 281; Benjamin v. Wheeler, 8 Gray, 409.

If a man has a legal right, the courts will not inquire into the motive by which he was actuated; a different rule would lead to the encouragement of litigation. Phelps v. Nowlen, 72 N. Y. 43.

If the act, not actionable in itself, is accompanied by a bad motive—affords a ground of action—then it follows that

if an act be in itself lawful, a bad motive becomes the basis of a suit; that is, a man is sued for his motives, irrespective of his conduct.   Heywood v. Tillison, 75 Me. 225.

TUTTLE & GRIER, attorneys for appellee.

An action will lie for inducing one to break a contract with the plaintiff to do certain work, if done without justifiable cause, with the intention of injuring the plaintiff, if damage results to the plaintiff.   Lumley v. Gye, 2 El. & Bl., 216; Bowen v. Hall, L. R., 6 (Q. B. D.) 333.

The leading case upon this proposition of law is Lumley v. Gye, 16 Victoria (1853), in the Queen's Bench, reported in Ellis & Blackburn, Vol. 2, p. 216.   The action was brought " by the lessee of a theatre for maliciously procuring Miss Wagner, who had agreed with the plaintiff to perform and sing in his theatre and nowhere else, for a certain term, to break her contract and not to perform and sing at the plaintiff's theatre, and to continue away during the time for which she was engaged."   Three of the judges held that the counts were good and that an action would lie, one judge dissenting.

The argument found in the report of this case seems to very fully cover the ground.   Crompton, J., in his opinion, says among other things:   " It is clear, from Blake v. Lanyon, 6 T. R. 221, and other subsequent cases, Sykes v. Dixon, 9 A. & E. 693, Pilkington v. Scott, 15 M. & W. 657, and Hartley v. Cummings, 5 Con. B. 247, that the action for maliciously interfering with persons in the employment of another is not confined to menial service, as suggested in Taylor v. Neri, and I see no reason for quoting such a rule; but I should rather, if necessary, apply such a remedy to a case where the wrong and damage are strictly analogous to the wrong and damage in a well organized class of cases."   Erle, J., in his opinion, says, among other things:   " If it is objected that this class of actions for procuring a breach of contract of hiring rests upon no principle and ought not to be extended beyond the cases heretofore

decided, the answer appears to me to be that the class of cases referred to rest upon the principle that the violation of the right is a cause of action, and that when the principle is applied to the violation of a right arising upon a contract of hiring, the nature of the services contracted for is immaterial. He who maliciously procures a damage to another, by violation of his right, ought to be made to indemnify; and that, whether he procures an actionable wrong or a breach of contract." The following cases are stated as authority : Winsmore v. Greenbank, Willes 577; Green v. Buttom, 2 C. M. & R. 707; Shepherd v. Wakeman, 1 Sid. 79.

An action will lie for intentional and willful acts calculated to cause damage to the plaintiff in his or her lawful business, done with the intention to cause such damage and loss without right or justifiable cause on the part of the defendant, if actual damage and loss result. Carew v. Rutherford, 106 Mass. 1; Walker v. Cronin, 107 Mass. 555; Chipley v. Atkinson, 1 Southern Reporter 934; Delz v. Winfree et al., 16 Southwestern Reporter 111; Temperton v. Russell, Vol. 4, The Reports (Queen's Bench Appeals), 376; Moores & Co. v. The Bricklayers' Union No. 1 et al., VII Railroad & Corporation Law Journal, 108 (Ohio, 1889).

It is not necessary that a definite contract be broken to render defendants liable. Rice v. Manly, 66 N. Y. 82; Benton v. Pratt, 2 Wend. 383.

As to the limits of legitimate competition. Olive et al. v. Van Patten et al. (Tex.), 25 S. W. Rep. 428; Curran v. Galen et al., 22 N. Y. S. 826; Lovejoy v. Michels, 88 Mich. 15; Jackson et al. v. Stanfield et al., 36 N. E. Rep. 345; Moore v. Bennett, 140 Ill. 69.

Freedom is the policy of this country. But freedom does not imply a right in one person, either alone or in combination with others, to disturb or annoy another, either directly or indirectly, in his lawful business or occupation, or to threaten him with annoyance or injury, for the sake of compelling him to buy his peace; or, in the language of the statute cited above, " with intent to extort money or any

pecuniary advantage whatever, or to compel him to do any act against his will." The acts alleged and proved in this case are peculiarly offensive to the free principles which prevail in this country; and if such practices could enjoy immunity, they would tend to establish a tyranny of irresponsible persons over labor and mechanical business which would be extremely injurious to both. Carew v. Rutherford, 106 Mass. 1; Walker v. Cronin, 107 Mass. 555.

Every one has the right to enjoy the fruits and advantages of his own enterprise, industry, skill and credit. He has no right to be protected against competition, but he has a right to be free from malicious and wanton interference, disturbance or annoyance. If disturbance or loss come as a result of competition or the exercise of like rights by others, it is *damnum absque injuria*, unless some superior right by contract or otherwise is interfered with. But if it comes from merely wanton or malicious acts of others without the justification of competition or the service of any lawful purpose, it then stands upon a different footing, and falls within the principle of the authorities first referred to. Walker v. Cronin, 107 Mass. 555; Gunter v. Astor, 4 J. D. Moore 12; Hart v. Aldrich, Cowper 54; Shepherd v. Wakeman, Sid. 79; Winsmore v. Greenbank, Willes 577; Lumley v. Gye, 2 El. & Bl. 216; Chipley v. Atkinson, 1 So. Rep. 934, which was decided in 1887.

An action lies, in behalf of an employe, against a person who has maliciously procured the employer to discharge such employe from employment in which he is engaged under a legal contract for a certain period, provided damage result to the employe from such discharge. Chipley v. Atkinson, 1 So. Rep. 934.

No action for conspiracy will lie by a butcher against several dealers in beef cattle because they have combined to refuse to sell him beeves; but where the petition further alleges that defendants also induced a certain dealer in slaughtered meat to likewise refuse to sell him, such interference with his business is a cause of action, and it is error to sustain a demurrer to the petition. Delz v. Winfree et al., 16 S. W. 111.

In the case of Walker v. Cronin, 107 Mass. 562, it was recognized to be a general principle that "in all cases where a man has a temporal loss or damage by the wrong of another, he may have an action upon the case to be repaired in damages. The intentional causing of such loss to another, without justifiable cause, and with malicious purpose to inflict it, is of itself a wrong."

On the ground of common rights, where every one is lawfully struggling for the mastery, and where losses suffered must be borne, there are losses which every one is protected against. Those are losses willfully caused to one by another, in the exercise of what otherwise would be a lawful right, from simple motives of malice. Moores & Company v. Bricklayers Union No. 1 et al., 7 R. & C. L. J. 108 (Ohio, 1889).

"The law appears to me to be, that a combination by two or more persons to induce others not to deal with a particular individual, or enter into contracts with him, if it is done with an intent to injure that individual, and if he is therefore injured, is an actionable wrong." Tamperton v. Russell, Vol. 4 of The Reports (Queen's Bench Appeals), 376; Olive et al. v. Van Patten et al., 25 S. W. Rep. 428.

A petition alleging that defendants (wholesale lumber dealers) formed an association agreeing not to sell to others than dealers, that because of refusal by plaintiff (another dealer) to join said association, they had maliciously distributed circulars asking that patronage be withdrawn from plaintiff till he agreed not to sell to others than dealers, thereby influencing others not to deal with plaintiff, to his injury, states a good cause of action. It could not be held that defendants had the right to prevent plaintiff from selling to customers, or that such interference by them (defendants) was serving a legitimate purpose connected with their own business. To break plaintiff down as a competitor for the customers' trade might, if it is true, result in benefit to defendants, but such a benefit, obtained in such a manner, could not be deemed a legitimate purpose within the meaning of the opinion quoted. See also Curran v.

Galen et al., 22 N. Y. S. 826 (1892) ; Lovejoy v. Michael, 88 Mich. 15.

A conspiracy formed and intended directly or indirectly to prevent the carrying on of any lawful business or to injure the business of any one by wrongfully preventing those who would be customers from buying anything from the representatives of such business, by threats or intimidations, is in restraint of trade, and is unlawful. Jackson et al. v. Stanfield et al., 39 N. E. Rep. 345.

No one is authorized to unlawfully destroy or hinder the lawful business of another for the purpose of helping himself. People v. Petheran, 31 N. W. Rep., 188 Mich.

A combination or conspiracy among a number of persons engaged in a particular business to stifle or prevent competition, and thereby to enhance or diminish prices to a point above or below what they would be if left to the influence of unrestrained competition, is contrary to public policy, and all courts will refuse their aid to the enforcement of contracts by which such combinations are sought to be effected. Moore v. Bennett, 140 Ill. 69.

In order to render the defendants liable for willfully inducing parties to break their contract or contracts with the plaintiff, done by the defendants with the intention of causing injury to the plaintiff, without right or justifiable cause, and from which acts damage results to the plaintiff, it is not necessary that such inducements should be with either force, fraud, threats or intimidations.

Such inducement on the part of the defendants will give a cause of action if consisting merely of advising, or arguing that it would be to the business interest of the one breaking the contract, if such acts were done by the defendants maliciously, without right or justifiable cause, and with the intention of injuring the plaintiff, if damages actually result therefrom. Lumley v. Gye, 2 Ellis & Blackburn, 216; Bowen v. Hall, L. R., 6 (Q. B. D.), 333; Carew v. Rutherford, 106' Mass. 1; Walker v. Cronin, 107 Mass. 555; Chipley v. Atkinson, 1 So. Rep. 834; Delz v. Winfree et al., 16 S. W. Rep. 111.

" Merely to persuade the person to break his contract may not be wrongful in law or in fact, but if the persuasion be used for the direct purpose of injuring the plaintiff, or of benefiting the defendants at the expense of the plaintiff, it is actionable if injury ensues from it. The language used in this case is 'persuasion,' 'maliciously induced,' 'enticing and procuring another to break a contract." Bowen v. Hall, L. R., 6 (Q. B. D.), 333.

Malice is the intent to injure another, without right or justifiable cause. Moores & Company v. The Bricklayers Union No. 1 et al., 7 Railway & Corporation Law Journal, 108; State v. Coella (Wash.) 28 Pac. Rep. 28; Lovett v. State, 11 So. Rep. 550; The Territory v. Egan, 3 Dak. 119, Buckley v. Knapp, 48 Mo. 152; Michell v. Wall, 111 Mass. 498; Tuttle v. Bishop, 30 Conn. 80.

Malice, then, is really the intent to injure another, without just cause or excuse. Moores & Co. v. Bricklayers Union No. 1, 7 R. & C. L. J. 108.

It has been defined to mean the doing of the wrongful act intentionally, without just cause or excuse. It is a wicked and mischievous purpose which characterizes the perpetration of an injurious act without lawful excuse. State v. Coella, 28 Pac. Rep. 33.

The authorities are uniform upon the question of malice; although not in the exact language of our statute, all define, in substance, malice to be that state of mind or act when one willfully does that which he knows will injure another's person or property. The Territory v. Egan, 3 Dak. 130.

Malice, in its legal sense, meant any improper and sinister motive, not necessarily spite and hatred to the plaintiff; that an act done wrongfully and without reasonable and probable cause, in the wanton disregard of the rights of another, was malicious in law. Mitchell v. Wall, 111 Mass. 498.

A wicked intention to do another injury maliciously, is with deliberate intent to injure. Tuttle v. Bishop, 30 Conn. 85.

Where an injury is maliciously inflicted, the jury may, in

addition to the actual damages sustained, visit upon the wrongdoer vindictive or punitive damages for the double purpose of setting an example and of punishing the wrongdoer.    Grable v. Margrave, 3 Scam. 372; Sherman et al. v. Dutch, 16 Ill. 282; Dean v. Blackwell, 18 Ill. 336; W., St. L. & P. R. W. Co. v. Rector, 104 Ill. 296; Harrison v. Ely, 120 Ill. 83.

In vindictive actions, the jury are always permitted to give damages for the double purpose of setting an example and punishing the wrongdoer.    Grable v. Margrave, 3 Scam. 373.

The general rule is, that in trespass the plaintiff may recover not only for the pecuniary loss sustained as a natural and legal consequence of the trespass, but he may recover vindictive or exemplary damages, in consideration of the circumstances attending the wrongful act of malice, willfulness, wantonness or corrupt motive attending the act. Sherman et al. v. Dutch, 16 Ill. 285.

Where an injury is wantonly and willfully inflicted, the jury may, in addition to the actual damages sustained, visit upon the wrongdoer vindictive or punitive damages by way of punishment for such willful injury.    W., St. L. & P. R. W. Co. v. Rector, 104 Ill. 303; Harrison v. Ely, 120 Ill. 86.

In actions in tort the jury have necessarily a wide latitude, and the question of the extent of damages is almost exclusively for the jury.    A verdict will not be disturbed on the ground of excessive damages, unless it seems probable from the amount of the damages assessed, that the jury acted under the influence of prejudice, passion or misconception of the evidence.    Schlencker v. Risley, 3 Scam. 483; C. & R. I. R. W. Co. v. McKean, 40 Ill. 218; Baker v. Young, 44 Ill. 42; City of Chicago v. Smith, 48 Ill. 107; Freeman v. Tinsley, 50 Ill. 497; C. & A. R. R. Co. v. Pondron, 51 Ill. 333; C., R. I. & P. R. W. Co. v. Otto, 52 Ill. 416; Sulzer v. Yott, 57 Ill. 164; Galesburg v. Higley, 61 Ill. 287; Douglass v. Gausman, 68 Ill. 170; Conrad Seipp Brewing Co. v. Doody, 25 Ill. App. 243.

The amount of exemplary damages is entirely within the

Doremus v. Hennessy.

discretion of the jury, and the verdict can be set aside by the court only when it is grossly excessive or evidently actuated by passion, prejudice or undue influence. 1 Sedg. on Damages, p. 547, Sec. 388; Rogers v. Henry, 32 Wis. 327; Berchard v. Booth, 4 Wis. 67; Borland v. Barrett, 76 Va. 128; Gaetz v. Ambs, 27 Mo. 28; Court of Appeals v. Virginia, 17 Gratt. 488.

Mr. Justice Waterman delivered the opinion of the Court.

In her declaration, appellee alleges that she was, in the year 1888, and thereafter, keeping a laundry office in the city of Chicago; that is, a place at which she received clothing which people desired to have laundered; that she procured the laundering of the same, by various persons operating laundries, who, when the work was properly done, returned the same to her, for delivery by her to her customers; that the appellants maliciously and unlawfully contrived, plotted together and conspired to injure her in her good name and credit, and injure, damage and utterly destroy her said business, because she would not increase the price charged by her for the laundering to the price fixed and required by a certain organization known as the Chicago Laundrymen's Association, of which the defendants were members; and that for the purpose of carrying out their said design, they induced various parties with whom she had business engagements, whom she names, by false representations that she was financially irresponsible, and by threats and intimidations that the appellants would injure the business of said parties, to break their contracts and engagements with her to do laundry work for her.

That the said persons with whom she had engagements, as aforesaid, did, in consequence of the aforesaid acts of the said appellants, break their said contracts with her, and in consequence thereof, her said business of a laundry agency was broken up and ruined, and she thereby sustained great loss and damage.

That the said appellants so contrived, plotted and conspired, and so, by the means aforesaid, injured, broke up and destroyed her said business, and caused her great loss and damage, for no purpose whatever, but to injure and destroy her said business.

A great deal of testimony was taken upon the trial, the result of which was a verdict of $6,000 for appellee, upon which judgment was rendered, from which appellants prosecute this appeal.

The essence of a conspiracy, so far as it justifies a civil action for damages, is a concert or combination to defraud, or to cause other injury to persons or property, which, because of acts done in pursuance of such conspiracy, actually results in damage to the person or property of the person injured or defrauded. A civil action will not lie for a mere conspiracy. It is the damage done in pursuance of the conspiracy which gives the right of action.

It is now well established that, in civil actions, the conspiracy is not the gravamen of the charge, but may be pleaded and proved in aggravation of the wrong of which the plaintiff complains, and as enabling him to recover against all the conspirators, as joint tort feasors. If a plaintiff fail in the proof of a conspiracy, or concerted design, he may yet recover damages against such of the defendants as are shown to be guilty of a tort, directly resulting in damages to the plaintiff.

It has sometimes been said that an act which is not unlawful if done by one person, can not be unlawful because done by a multitude. This may be true. It must, however, be borne in mind, that the united act of many persons is very different from the isolated act of one, as it is very seldom that each of many persons do, at one time, as individuals, the same act, without there having been before, an agreed concert of action. The united call or cry of a thousand persons is a very different thing from the call or cry of one; and if the united calling of a thousand was by previous concert, then the loud acclaim or disturbance, which the union of so many voices make, is the act of each participating therein.

Honest competition in business is always permissible, and it is not easy to draw the line between acts which are but lawful competition and those which are unlawful, because designed to, and actually resulting in an injury to the person or property of a rival. The line of demarkation is, in this matter, no more difficult of ascertainment than as to the lawfulness or unlawfulness of many other things of which the law takes note.

In Mogul Steamship Co. v. McGregor, Gow & Co., L. R., 15 Q. B., Div. 476, Lord Coleridge, C. J., said: "It seems that a large number of important and rich ship owners joined together, and they issued two circulars or documents to the different traders and their agents, with whom they had been in the habit of dealing in the tea, and other trades in China, to the effect that if the persons whom that circular reached and was meant to affect, should deal with the plaintiff or plaintiff's ships, they, the defendants, would deny them all the benefits, or at least a very large and substantial benefit which had accrued to them in their dealings with the defendants; and that if the persons to whom they addressed the circular would deal exclusively with them, they should have certain advantages at their hands. * * It is conceivable that if such a conspiracy, because conspiracy undoubtedly it is, being proved in point of fact, were made out to be, not the mere honest support and maintenance of a defendant's trade, but the destruction of the plaintiff's trade, and their consequent wrong as merchants, it would be an offense for which an indictment for conspiracy, and if an indictment, then an action for conspiracy would lie; * * * that the conspiracy to do the thing which has been called by the name of 'boycotting' is unlawful and an indictable offense, and if so, then a thing for which an action will lie. An action may well lie for that which is complained of here."

The case of James Van Horn et al. v. Amos Van Horn et al., 52 N. J. Law, 284, is quite like the present. That was an action in tort for acts done in pursuance of a conspiracy to break up the separate business of Emma D. Van

Horn. Among other things it was charged that with the purpose and intent of breaking up and ruining her business, the defendants persuaded a certain firm in New York to decline to complete their contract with the said Emma Van Horn, and did prevail upon said firm, by means of fraudulent and corrupt representations as to the personal and business character and standing of the plaintiff, to remove the stock already supplied to her, and to refuse to deliver other goods as agreed for, leaving her entirely without any stock to sell, or customers to purchase from her. As to a demurrer to the declaration, this court said:

" The declaration begins in this form, and is no exception in this particular. It is an action on the case, setting forth a malicious conspiracy, with the concurrent confederation, with the means employed to perfect its purpose, and the resulting damage to the plaintiff. No further certification is required, than the general terms in which it is pleaded in the declaration. The whole pleading is based upon the malicious conduct of the defendants in destroying the plaintiff's credit and patronage and breaking up her business, and means of livelihood."

It is urged that appellants had a right to offer to the parties who were doing work for appellee, a greater price for doing similar work for them, appellants, than appellee was paying, and a right to ask such persons to give up appellee's work, and that to do that of appellants, would be found more profitable; that this was but the carrying on, by the appellants, of their own business, and in the line of legitimate competition with appellee, who was engaged in the same business.

It is not for the doing of this, merely, that the present action was brought. As has been already stated, the declaration charges and the jury have found that the defendants conspired together, and induced parties to break their contracts with appellee, and to refuse to do business with her, for the purpose of breaking up and destroying the business of appellee; that the action of appellants in this regard was malicious, and was an attempt to obtain for themselves the

business which appellee was doing, not by legitimate competition, but for the purpose only, of destroying the business of appellee. That an action may be maintained for the malicious interference with the business of another, his occupation, profession, or way of obtaining a livelihood, has for many years been recognized by the law; as where the plaintiff is the owner of a decoy for catching wild fowl, and the defendant, without entering upon the plaintiff's land, fires off guns near to the decoy, and frightens wild fowl away from it; where, also, if a man menaces the tenants at will of another, of life or member, so that they depart from their tenures, an action on the case lies against him.

There is a very old case of an action brought against one for firing guns at the natives of a semi-civilized country, whereby they were frightened, and the plaintiff lost his trade with them which he otherwise would have had.

So the discharge of a gun by an individual by which a horse is frightened and the owner thereof is injured will subject the person firing to an action on the case, although he had no intention or reasonable ground for apprehending the frightening of the horse. Bacon's Abridgment, Actions on the Case, 119; Webb's Pollock on Torts, 406–408.

It has sometimes been said that the law does not take notice of the motives with which actions are done. This is not altogether true. The action on the case for malicious prosecution is founded upon the malicious intent with which the prosecution was instituted.

In the case of Mogul Steamship Co. v. McGregor, Gow & Co., L. R., 21 Q. B. 544-553, Chief Justice Coleridge said : " But it is said that the motives of these acts was to ruin the plaintiff's trade, and that such a motive, it has been held, will render the combination itself wrongful and malicious, and that if damage has resulted to the plaintiffs an action will lie. I concede that if the premises are established the conclusion follows. It is too late to dispute if I desired it, as I do not, that a wrongful and malicious combination to ruin a man in his trade may be ground for such an action as this."

In the same case, upon appeal, L. R., 23 Q. B. 598, all of the judges were of the opinion that if the acts done in pursuance thereof were shown to have been for the purpose of ruining and destroying the plaintiff's trade, then an action for the damage occasioned could be maintained. Bowen, J., page 614, says : " No man, whether trader or not, can, however, justify damaging another in his commercial business by fraud or misrepresentation. Intimidation, obstruction and molestation are forbidden; so is the intentional procurement of a violation of individual rights, contractual or other, assuming always that there is no just cause for it. The intentional driving away of customers by show of violence (Tarleton v. McGawley, Peak N. P. C. 270), the obstruction of the actors on the stage by a preconcerted hissing (Clifford v. Brandon, 8 Camp. 358, and Gregory v. Brunswick, 6 Man. & G. 205), the disturbance of wild fowls in decoys by firing of guns (Carringten v. Taylor, 11 East, 571, and Keeble v. Hickeringill, 11 East, 574 n.), the impeding or threatening servants or workmen (Garrett v. Taylor, Cra. Jac. 567), the inducing persons under personal contract to break contracts (Bowen v. Hall, 6 Q. B. D. 333, and Lumley v. Gye, 2 E. & B. 216), all are instances of such forbidden acts."

It is not necessary to the maintenance of an action on the case that there should be any moral turpitude in the act complained of. It lies whenever a damage is occasioned by the wrong done. The action of trespass on the case is founded upon the mere justice and conscience of the case, and is in the nature of a bill in equity.

It is a universal remedy given for all personal wrongs and injuries, without force, so-called, because the plaintiff's whole case or cause of complaint was formerly set out in the original writ.

When any special consequential damage arises, which could not be foreseen and provided for in the ordinary course of justice, the party injured is allowed to bring a special action on his own case, upon a declaration framed according to the peculiar circumstances of his own particular grievance, for, whenever the common law gives a right or

prohibits an injury, it also gives a remedy by action, and therefore whenever a new injury is done, a new method of remedy may be pursued. 3 Blackstone's Com. 122; Bird v. Randall, 3 Burr, 1353; Millar v. Taylor, 4 Burr 2345; Webb case, 8 Coke 96; Adams v. Page, 7 Pickering 541.

To conspire, comprehends any confederacy to prejudice a third person, as where divers confederate to impoverish another. Mott v. Danforth, 6 Watts 304.

While no civil action lies for the mere conspiracy, whenever, in pursuance of an unlawful combination to defame or injure another in his particular avocation or business, means have been employed which tended to effectuate, and to a greater or less extent did accomplish, the object of the conspirators, an action on the case will lie. Wilder v. McKee, 111 Penn. St. 335; Place v. Minster et al., 65 N. Y. 89–95; Cooley on Torts, Second Ed., 142; Webb's Pollock on Torts, pp. 401, 671-672; Walker v. Cronin, 117 Mass.; Bacon's Ab., Actions on the Case, f.

Appellee's action is not a mere proceeding to recover damages of appellants, because they induced certain persons to break their contracts with her; her action is for damages by her sustained in consequence of the malicious destruction and ruin of her business by appellants, in pursuance of their conspiracy so to do.

In proof of such charges, she shows that for the purpose of breaking up and ruining her business, they did, in pursuance of a preconcerted plan, induce various persons to break their contracts with her, and did persuade many persons to refuse to do work for her, as a consequence of which her customers were lost and her business destroyed. The conspiracy charged and proven is only a matter of inducement, or evidence; it is the acts thereunder actually done by appellants, and the damage suffered in consequence thereof by appellee, that is the gist of this action.

Taking the instructions given by the court below as a whole, we think appellants have no just cause for complaint thereon.

In such an action as this, where the gist of the plaintiff's

suit is the damage that has resulted from the malicious acts of the defendants, punitive damages may be imposed by the jury. The amount of such damage is, within wide limits, a matter of discretion for the jury.

For these and other considerations already mentioned, we see no sufficient reason for interfering with the verdict of the jury, sanctioned as it has been by the judge before whom the case was tried.

The judgment of the Circuit Court is affirmed.