## Anderson E. Martin et al. v. George A. Leslie.

1. CONSPIRACY—*Must be Established as Alleged—Requisites of a Recovery.*—A conspiracy must be established as alleged by a preponderance of the evidence, or at least some wrongful or tortious act of the conspirators resulting in damage to the plaintiff must be shown, before there can be a recovery against all of the defendants.

2. ATTORNEYS AT LAW—*Liability When Acting in Good Faith.*—An attorney at law is not liable to the charge of conspiracy when, acting at one's request to protect his *bona fide* creditors, he causes judgment to be entered on a valid note, an execution levied and a sale under it, which results in injury to the one making the request.

3. PRACTICE—*Allegations and Proofs Must Correspond.*—In an action for a conspiracy the allegations as to the several defendants without proof to support them as to part of the defendants, are not a sufficient basis for a judgment against them all. The judgment is a unit, and if erroneous as to one, it can not stand.

4. HANDWRITING—*Not to be Proved by Comparison with Documents Not in Evidence.*—Handwriting can not be proved or disproved by comparison, except the instrument to be used as the standard is properly in evidence.

5. INSTRUCTIONS—*Assuming Matters in Dispute.*—In an action for a conspiracy an instruction which assumes that a wrong was actually committed is erroneous.

6. SAME—*As to Vindictive Damages.*—An instruction which tells the jury that when vindictive damages are allowed they should be commensurate with the offense, is erroneous as calculated to mislead the

Martin v. Leslie.

jury into the belief that they can assess vindictive damages without proof of actual damages.

7. SAME—*As to Rank and Influence of a Part of the Defendants.*— An instruction in an action for conspiracy which tells the jury that in assessing damages, if they find the defendants or some of them guilty, they should take into consideration the rank and influence of the defendants, is erroneous, as it leaves the jury free to assess punitive damages upon the basis of the rank and influence of one defendant alone, although the others may be among the humblest citizens of the land.

8. VINDICTIVE DAMAGES—*Not to be Allowed Without Proof of Actual Damages.*—Vindictive damages can not be allowed in the absence of proof of actual damages.

9. SAME—*Allowance of, a Matter for the Jury.*—The allowance of vindictive damages is a matter to be left to the jury in cases where there is proof of actual damages.

10. ESTOPPEL—*To Find Fault with the Court.*—A party practicing before a court can not lead the court into error by his own request and then find fault if the court commits a like error of its own motion.

**Trespass on the Case,** for a conspiracy. Appeal from the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge, presiding. Heard in this court at the March term, 1900. Reversed and remanded. Opinion filed January 24, 1901.

**Statement by the Court.**—Appellee brought an action in case against appellants in the nature of a conspiracy, a trial of which before the court and a jury resulted in a verdict in favor of appellee of $15,000 and judgment thereon, from which this appeal is prosecuted.

The declaration in substance alleges that plaintiff was a shoe merchant possessed of goods worth $15,000 derived from his business, an income of $5,000 annually and a good name, credit and reputation; that in January, 1896, he retained the defendants, the Martins, as his attorneys, and they continued so to act until March 1, 1897, and became thoroughly familiar with his business; that the defendants, the Martins, and Samuel A. French, knowing that the Martins were acting as his attorneys, did conspire with each other wrongfully and wickedly to injure plaintiff, deprive him of the comfort, fellowship and society of his wife, and wrongfully obtain the property of plaintiff by legal process and forced-sale prices under its value, that they thereafter might sell the property of plaintiff at higher prices; that

plaintiff's wife, Lizzie M. Leslie, on January 29, 1897, caused judgment to be entered against plaintiff in the Circuit Court of Cook County for $3,748.33 upon a note held by her, made by plaintiff, and given to her without any consideration; that on the same day his wife also began a suit by attachment in the same court upon an alleged indebtedness of $2,000 of plaintiff to her; also she on the same day filed a bill for divorce against plaintiff in the same court, charging him with adultery, and procured an injunction therein, restraining him from disposing of his property; that on the same day the sheriff took possession of plaintiff's business and property on execution issued on said judgment and on the writ of attachment; that plaintiff retained the defendants, the Martins, as his attorneys in said litigation, which retainer they accepted and thereafter pretended to act for him in obtaining a settlement thereof; that acting under the advice of the Martins he executed a note to one Miller for $7,000, though he only owed Miller $1,150, the Martins having advised him to make the note large enough to include all his indebtedness; that on January 30, 1897, the said Martins entered judgment on the note to Miller and wrote his creditors that they were acting in the interest of said creditors; that afterward the said Martins advised plaintiff to execute an assignment of all his book accounts to the defendant Garrie S. French; that the assignment was prepared by the defendant Samuel A. French, and purported to transfer to said Garrie S. French the choses in action of plaintiff as security for the judgments of Miller and his wife; that afterward the Martins continued to act as plaintiff's attorneys until he learned of their duplicity and unfaithfulness.

The declaration further alleges that the defendants did agree together to cause his wife to enter judgment on said note, to bring suit against him for divorce, and to cause plaintiff to execute the note to Miller, and thereafter, under false pretenses, to have plaintiff, his wife and Miller to agree that Garrie S. French, who was acting in concert with the other defendants, should bid in plaintiff's property

at sheriff's sale, thereby obtaining possession of it, and there-
after refuse to deliver the same or the proceeds to either
plaintiff, his wife or Miller; that the Martins, in pursuance
of said conspiracy, did counsel with plaintiff's wife from
January 1, 1896, until July 15, 1897, and caused her to
place said note in their hands for collection, although they
knew that it was executed without any consideration, and
did abet plaintiff's wife in instituting said attachment suit,
although they knew he was not indebted to her in any sum.
The declaration then proceeds to allege facts, denying any
basis for the attachment and divorce suits, and that defend-
ants caused plaintiff's wife to prosecute them, and sets up
divers acts of the different defendants alleged to have been
done in prosecution of the conspiracy, as a result of which,
it is alleged, plaintiff had suffered great damage in his busi-
ness reputation, etc.

An amended declaration was subsequently filed, making
substantially the same allegations, and, in addition, that
the Martins, in further pursuance of the conspiracy, caused
plaintiff's wife and Miller to execute a certain trust agree-
ment to Garrie S. French, by which the latter was to buy
at sheriff's sale plaintiff's property, take possession thereof,
and sell and dispose of it in such manner as said trustee
deemed best, and out of the proceeds to first pay all costs,
expenses and disbursements, including attorney's fees and
$150 per month compensation for himself; also to pay, first,
the judgment in favor of plaintiff's wife, and apply the bal-
ance on the Miller judgment, and when paid, or if the par-
ties to said judgment satisfied the same, said trustee should
turn over said property or the proceeds thereof remaining
to the plaintiff; that Garrie S. French purchased said prop-
erty at sheriff's sale for $5,100 February 11, 1897, but paid
no money, the judgment being receipted for that sum; that
February 21, 1897, Garrie S. French was ordered to turn
over said property to a receiver of complainant, who had
been appointed for the benefit of his creditors, but did not
comply with said order, and has ever since refused so to do;
that July 20, 1897, by consent of plaintiff, his wife and

Miller, all the costs, expenses and attorney's fees under said judgments were paid and satisfied, of which the defendants had notice, but the said Garrie S. French and the other defendants did not turn over said property, or any part thereof, nor make any account thereof, and said Garrie S. French has refused to make any account whatever of the property. The plea was not guilty.

GAGE & DEMING, attorneys for appellants.

JAMES J. BARBOUR, attorney for appellee; EDWIN SUTH-ERLAND, of counsel.

MR. JUSTICE WINDES delivered the opinion of the court.

Numerous claims of error are urged upon the attention of the court by reason of which, it is contended, the judgment should be reversed, but it is unnecessary to, and we do not consider them in detail.

It needs no citation of authority that in an action for conspiracy the conspiracy must be established as alleged by a preponderance of the evidence, or at least some wrongful or tortious act of the conspirators resulting in damage to the plaintiff, before there can be a recovery against them all.

We have set out in detail the allegations of the plaintiff's declaration, showing the conspiracy on which he relies. as a basis for recovery, which may be summarized as follows:  That the defendants, the Martins, while acting as plaintiff's attorneys, well knowing that a certain note of plaintiff to his wife was executed without any consideration, that plaintiff was not indebted to his wife in any sum whatever, and that plaintiff was not guilty of adultery, did conspire and agree with the defendants, the Frenchs, among themselves, wrongfully and wickedly intending to injure plaintiff, to deprive him of the comfort and society of his wife, and wrongfully to obtain plaintiff's property by legal process and forced-sale prices under its value, that they might thereafter sell said property at higher prices, and did further agree to cause plaintiff's wife to enter judgment on said note, to institute the attachment suit against plaint-

iff described in the declaration, and to cause his wife to institute suit for divorce on the ground of adultery, and to cause plaintiff to execute a note in favor of one Miller for $7,000, and thereafter, under false pretenses, to have plaintiff's wife and Miller to agree that Garrie S. French bid in plaintiff's property at sheriff's sale, obtain possession thereof, and thereafter refuse to deliver the same or the proceeds to either plaintiff, his wife or Miller.

The evidence fails to show that the defendants, the Martins, knew either that the plaintiff's note to his wife was executed without any consideration, or that plaintiff was not indebted to his wife in any sum which was the basis of the attachment suit, or that plaintiff was not guilty of adultery; but on the contrary it tends strongly to show that there was a good and valid consideration for the note, and that plaintiff was indebted to his wife in the sum of $2,000 besides; and there is no evidence that the Martins knew that plaintiff was not guilty of adultery, except that one of the Martins, which one it does not appear, was present in court at the trial of the divorce case long after the alleged conspiracy is claimed to have originated, when, after a hearing, plaintiff's wife's solicitor, said Samuel A. French, took a non-suit, for what reason the evidence fails to show.

There is no evidence from which the jury could have found that the Martins advised plaintiff to execute a note for $7,000 in favor of Miller with any wrongful intent, but on the contrary it appears from the evidence of Leslie himself that it originated with him, and he did it without the advice of either of the Martins and of his own free will, for the purpose of enabling Miller and his other creditors to protect themselves. The fact that A. E. Martin, pursuant to Leslie's request, entered up judgment on the Miller note, is entirely consistent with his innocence. In fact, we think the evidence entirely fails to show any wrongful intent on his part in this respect. If an attorney at law is liable to the charge of conspiracy, when, acting at one's request to protect his *bona fide* creditors, he causes judgment to be

entered on a valid note and execution levied, a sale under which results in injury to one making the request, there is no safety in the legitimate practice of the law.

There is no evidence which shows that the Martins, or either of them, in any way brought about the execution of the agreement by which Garrie S. French was made trustee and was to buy plaintiff's property at sheriff's sale. Leslie testifies that A. E. Martin was present in French's office when the suggestion was first made of joining Miller's and his wife's indebtedness and making a settlement with them; who made the suggestion he does not say. Miller, on cross-examination, says when he read the declaration of trust he sent for Martin, which one he does not say, consulted him about signing it, and Martin said it was all right. That advice was entirely consistent with innocence so far as appears from anything in the record. He was looking out for Miller's interest, and might well have thought that it was a wise thing for Miller to do not to have Leslie's property put up at forced sale when the claims of Mrs. Leslie were before Miller. Any attorney, the most honest and well meaning, might have given like advice. There is no evidence from which there could be an inference of the least bad faith on the Martins' part in this connection, except that A. E. Martin and Samuel A. French frequently met about this time, but what took place between them does not appear. Leslie testified that he asked A. E. Martin to help him out after the sheriff's levy under Mrs. Leslie's judgment, and that Martin promised to do so, and wrote letters to Leslie's creditors in his, Leslie's, interest, and besides, Martin, being Miller's attorney in the matter of the $7,000 note, would very naturally see French, who was at this time Mrs. Leslie's attorney. We, however, think this evidence, instead of being a basis for any such inference, gives the acts of the Martins an appearance of integrity and good faith.

According to the plaintiff's own evidence, there is nothing whatever to connect the defendant Alva T. Martin with the alleged conspiracy, except that plaintiff wrote a letter

Martin v. Leslie.

to Ezra T. Miller and sent it to Mr. Miller by Alva T. Martin. Miller testifies that this letter was a request from Leslie to come to Martin's office, and that this occurred after Leslie had been closed by the sheriff. Alva T. Martin in his evidence denies all connection with any of the matters relating to the alleged conspiracy.

We have been unable to discover any evidence of a wrongful intent on the part of the Martins toward Leslie, or that they did any act whatever which resulted in a legal wrong to Leslie.

It follows from this state of the proof as to all the essential elements of the conspiracy alleged and of wrongful acts by the Martins, that the judgment is erroneous and can not stand. Allegations as to several defendants, without proof to support them as to a part of the defendants only, are not a sufficient basis for a judgment against them all. The judgment is a unit, and if erroneous as to one it can not stand.

Counsel for appellants contend that the judgment should be reversed without remanding, but from a careful consideration of the evidence we are not prepared to hold that plaintiff has no just cause of complaint as against the Frenchs, and that the evidence does not tend to show that the two defendants, the Frenchs, tortiously and wrongfully planned a scheme to get control of the plaintiff's property, sell it and appropriate the proceeds thereof, and for that reason we think the cause should be remanded.

There are some matters of procedure which we deem it necessary to consider. The court, against the objection of defendants' counsel, admitted in evidence a certain affidavit of one David Rankin, made October 2, 1899, more than two years after the commencement of this suit, the only purpose of which seems to have been to place it before the jury for them to compare the signature of David Rankin thereon, which was admitted to be genuine, with certain indorsements in the name of said Rankin on checks offered in evidence purporting to have been made by said David Rankin, and which it was claimed were forgeries, and if so, very

material evidence as against the defendants. It was, in our opinion, error to allow in evidence the affidavit of Rankin, because it was made long after the alleged conspiracy and does not tend to prove any act done pursuant thereto. The affidavit not being properly in evidence, it was also error to allow the jury to use it for comparison with the signatures on the checks. Rogers v. Tyley, 144 Ill.652–6; Himrod v. Gillman, 147 Ill. 293, and cases cited.

In the Rogers case, *supra*, it is held that handwriting can not be proved or disproved by comparison except the instrument used as a standard is properly in evidence. The other case cited is of like effect.

It is also claimed that the court erroneously admitted evidence relating to the manner in which Leslie's goods were handled after the sheriff's sale, and the mode in which the proceeds were disposed of, but we think there was no error in this regard. It was entirely proper to show any acts done by the defendants or either of them toward the accomplishment of the conspiracy alleged, and tending to show damage to the plaintiff resulting therefrom. In fact, it is alleged that part of the conspiracy was to sell the property by legal process under its value, and thereafter sell it at higher prices.

The court, at the request of the plaintiff, among other instructions, gave the following, viz.:

" 6. The court instructs the jury, if a conspiracy be proved, and the evidence connects but one defendant with the wrong actually committed in pursuance of the conspiracy, the plaintiff may recover against him as if he had been sued alone.

7. The jury are instructed that vindictive damages, assessed to punish defendants in civil actions, where vindictive damages are allowed by law, should be commensurate with the offense, and not with the ability of the defendants to pay; but that the jury may, if they find the defendants or any one or more of them guilty, in assessing such damages, take into consideration such defendants' rank and influence, in order to arrive at a conclusion as to the extent the injuries are increased thereby.

8. In estimating the damages the plaintiff has suffered, if any, you may consider the loss of profits the plaintiff has

sustained through the interruption to his business, if any, injury to his credit and reputation, if any, loss, if any, resulting from the failure of the defendants to surrender to the plaintiff's receiver plaintiff's books of account, and any sums the plaintiff has paid or become liable to pay for attorneys' fees in so far as any such loss of profits, injury to credit and reputation, loss for withholding plaintiff's books of account, if such appears from the evidence, and liability for attorneys' fees, shall be the direct consequence of wrongful or unlawful acts of the defendants, and in addition thereto, the jury may award against the defendants a further sum as punitive or exemplary damages, not exceeding in all the amount claimed in the declaration."

The court also, at request of defendants, gave to the jury, among other instructions, the following, to wit:

"3. The court instructs the jury that the plaintiff can only recover such damages as he has shown himself to have suffered, if any, by a preponderance of the evidence, and if the jury believe from the evidence that the plaintiff has not shown himself damaged in any sum, your verdict should be for the defendants.

4. The court instructs the jury, as a matter of law, that the plaintiff must prove by a preponderance of the evidence that there was a conspiracy entered into between Anderson E. Martin, Alva T. Martin, Samuel A. French and Garrie S. French, the defendants in this cause, to do an unlawful act whereby the plaintiff was injured, in order to entitle the plaintiff to any recovery. And the court instructs the jury that if it does not believe from the evidence that such a conspiracy was formed between those parties to do an illegal act which resulted in the injury of the plaintiff, as charged in the declaration, your verdict should be for the defendants.

5. The court further instructs the jury that it is necessary in this case for the plaintiff, in order to recover, to have shown by a preponderance of the evidence that each of the defendants were guilty of the wrongful acts charged in the declaration, or that those acts were done upon a combination and agreement between each of the parties to do or cause the same to be done, as charged in the declaration."

The court also, of its own motion, after giving the foregoing instructions and others, gave to the jury the following forms of verdict, and at the same time spoke to the jury as follows, to wit:

"If you find the defendants guilty your verdict shall be upon the following written form, which I now hand to you:

We, the jury, find the defendants guilty and assess the plaintiff's damages at the sum of —— dollars.

The jury are to insert in the blank space before the word 'dollars' the sum you agree on, should you find the defendants guilty."

And the court then said to the jury:

"If you find the defendants not guilty your verdict shall be in the following written form, which I now hand to you:

We, the jury, find the defendants not guilty."

No other forms of verdict were given by the court, nor were any requested by either of the parties.

We think the sixth instruction for the plaintiff above quoted was erroneous in that it assumes that a wrong was actually committed. As an abstract proposition of law, we are inclined to think the instruction is correct, but the assumption referred to was calculated to mislead the jury.

The seventh instruction for plaintiff is, in our opinion, erroneous in that it tells the jury that when vindictive damages are allowed they should be commensurate with the offense. We think it was well calculated to mislead the jury into the belief that they could assess vindictive damages without any proof of actual damages. The jury should have been left entirely free to determine the question under proper instructions as to whether or not vindictive damages were proper under the evidence. The law to this effect is conceded by appellee's counsel. 3 Sedgwick on Dams., Sec. 1318; Hawk v. Ridgway, 33 Ill. 475; Holmes v. Holmes, 64 Ill. 294–7; Ry. Co. v. Rector, 104 Ill. 303; Consolidated Coal Co. v. Haenni, 146 Ill. 615–28.

It should have been made plain also that no vindictive damages should be allowed without proof of actual damage. Hackett v. Smelsley, 76 Ill. 112–21; Meidel v. Anthis, 71 Ill. 242; 1 Sedgwick on Dams., Secs. 360 and 361, and cases cited.

We think also the instruction was erroneous in that it told the jury in assessing damages, if they found the defend-

ants or some of them guilty, they should take into consideration such defendants' rank and influence. There is no evidence in the record that the defendants or either of them had any rank or influence, unless it may be said that because three of the defendants were shown to be attorneys at law that this gives them rank and influence beyond that of any other citizen. But even if this is true, which we deem it unnecessary to decide, the instruction is improper in assuming, as it does, that the defendants had rank and influence. A more material matter, however, is that it leaves the jury free to assess damages upon the basis of the rank and influence of one defendant alone, although the others might be the humblest citizens of the land. It would certainly be the grossest injustice to assess punitive damages against a poor laboring man, or any citizen without wealth or standing in the community, for a malicious wrong, upon the same basis as for the same wrong done by his co-defendant who was a millionaire. Smith v. Wunderlich, 70 Ill. 426–37; Ry. Co. v. Smith, 57 Ill. 518; Lister v. McKee, 79 Ill. App. 210–4; Douglas v. Hoffman, 72 Id. 110.

The eighth instruction for plaintiff may be said to be technically erroneous in assuming, as it does, that the defendants failed to surrender to the receiver plaintiff's books of account, but we think not, because the evidence shows such failure, and it was not denied. This instruction, however, allows the jury to include in the damages they might assess, attorney's fees, for which plaintiff was liable as a consequence of defendants' wrongful acts, whereas there is no evidence of any such liability. Moreover, we think it calculated to mislead the jury in failing to make clear that they should not allow vindictive damages in the absence of proof of actual damage.

Inasmuch as there may be another trial, we deem it not improper to call attention to certain of the defendants' instructions, so that error with respect thereto may be avoided. The third, in effect, tells the jury that exemplary damages should not be allowed in the case. That, as we have seen, was a matter to be left to the jury in case there was evidence of actual damage.

The fourth and fifth instructions for the defendants are in conflict with the sixth for the plaintiff, in that the fourth tells the jury, in effect, that there must be a recovery against all or none of the defendants, and the fifth tells them that before the plaintiff can recover he must prove his case against each of the defendants. The law is, in our opinion, that if the conspiracy alleged is proven and a wrongful act done pursuant thereto by either, any number or all of the defendants, resulting in damage to the plaintiff, there may be a recovery against either, any number or all of such defendants. The wrong is the gist of the action when damage results, not the conspiracy. But in an action on the case, though a conspiracy is charged as to several, and is not proven, still if the evidence connects one of the defendants with the wrong alleged and actually committed, resulting in damage to the plaintiff, there may be a recovery against him alone. Cooley on Torts, 142 *et seq.*, and cases cited; Jones v. Baker, 7 Cowen, 445–8; Hutchins v. Hutchins, 7 Hill. 104–7, and cases cited; Laverty v. Vanarsdale, 65 Pa. St. 507; Garing v. Fraser, 76 Me. 37–41, and cases cited; Place v. Minster, 65 N. Y. 90–5; Parker v. Huntington, 3 Gray, 124–7, and cases cited; Doremus v. Hennessy, 62 Ill. App. 391–402; affirmed, 176 Ill. 608–14; Kimball v. Harman, 34 Md. 408; Bush v. Sprague, 31 Mich. 41–8.

Complaint is also made that the court erred in giving the said two forms of verdict alone. Of this the defendants can not complain, because they asked and the court gave their said instructions Nos. 4 and 5, which are based upon the theory that all of the defendants or none should be found guilty. They can not lead the court into error by their own requests and then find fault if the court commits a like error of its own motion.

Numerous other matters are urged upon our attention, but it seems unnecessary to consider them, save one claim made by appellee's counsel with regard to the inaccuracy and insufficiency of the abstract. Appellants' counsel has in some respects admitted that the abstract was not accu-

rate, and has supplied, by leave of the court, an additional abstract, but it does not supply all the inaccuracies and insufficiencies of the original. This has caused the court needless and unnecessary labor and investigation, which might as well have been avoided. The rule of this court requires a complete abstract, or an abridgment of the record, and counsel owe it to the court, as well as their clients, to comply with this rule. Counsel for appellee have not insisted upon a compliance with the rule and the court has not, though it would not hesitate to do so if it did not seem clear an injustice would be the result.

For the errors indicated the judgment is reversed and the cause remanded.