**Frank Hyman and Lizzie Hyman, Appellants, v. William A. Burmeister and Henry Kircher, Appellees.**

### Gen. No. 24,567.

1. BROKERS, § 6*—*when real estate broker is agent of purchaser.* Where one in the real estate business is told by another that he desires to purchase certain property and asks the former to get him a price on it, which he does or purports to do, he acts as the other's agent, notwithstanding, when asked by him whether he would have to pay the commissions, he said that he always got commissions from "the other side."

2. FRAUD, § 68*—*who liable for fraud on purchase of realty.* One who takes title to property from the owner and transfers it to a purchaser with knowledge of and for the purpose of furthering a scheme of the purchaser's agent to defraud the purchaser is liable to such purchaser.

3. CONSPIRACY, § 12*—*when charge of conspiracy will be treated as mere surplusage.* In an action on the case in the nature of a conspiracy, the gist of the action is not the conspiracy alleged, but the tort committed and the resultant damage, and when the tort and the damage proceed from a series of connected acts, the averment that they were done by several pursuant to a conspiracy does not so change the nature of the action, that if the wrongful acts are shown to have been done by one only, it cannot be maintained against him alone; in such case the charge of conspiracy will be considered as mere surplusage.

Appeal from the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Reversed and remanded. Opinion filed December 3, 1919.

VEIRS & McCLURE, for appellants.

NORTHUP, FAIRBANK & KLEIN, for appellees.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. PRESIDING JUSTICE THOMSON delivered the opinion of the court.

This is an appeal by the plaintiffs from a judgment against them for costs, based on a directed verdict.

The substance of the declaration filed by the plaintiffs is to the effect that relying on the integrity of the defendant, Burmeister, and intending to enable him to earn a real estate commisssion, they requested him to purchase certain premises for them at the best price obtainable; that Burmeister violated the confidence they put in him and that he falsely represented that if they made a deposit with him on the property, he could procure it from the owner for $11,000; that they made a deposit and followed that up with subsequent payments until the deal was consummated and the property transferred to them; that the property was owned by one Hanson and Burmeister procured it to be transferred by Hanson and wife by warranty deed, to the defendant Kircher; that Kircher and wife executed notes and trust deed to secure the same, said notes aggregating $7,500, the unpaid portion of the purchase price, and that Kircher and wife then conveyed the property by warranty deed to the plaintiffs, subject to the incumbrance. The declaration proceeds to aver that the defendants "conspiring together to defeat plaintiffs out of a large sum of money, unlawfully connived together to procure said premises from said David N. Hanson and to cause said premises to be deeded by said David N. Hanson to defendant Henry Kircher, for the false and deceitful purpose of procuring said premises to be conveyed by said defendant Henry Kircher and his wife to the plaintiffs herein for a consideration of fifteen hundred dollars in excess of the consideration paid to and realized by said David N. Hanson."

The evidence shows that Burmeister bought the

property from the Hansons for $9,500 and sold it to the plaintiffs for $11,000, passing the title through the defendant Kircher and his wife, whom he got to execute the notes for the unpaid part of the purchase price and the trust deed securing the same.

The plaintiff Frank Hyman testified that he told Burmeister, who was in the real estate business and who appears to have been the agent of the property then occupied by the plaintiffs as tenants, that he wanted to buy the property in question. A few days later Burmeister told him the owners wanted $14,000 for the property. Hyman said that was too much and a few days later Burmeister said he could get it for $13,000 and Hyman said that also was too much. Finally Burmeister told him the best he could do on it was $11,000; Hyman asked him if he thought the property was worth that much and Burmeister assured him it was a bargain at that figure. Hyman further testified that at the first conversation he had with Burmeister he asked if he could see the owners of the property and Burmeister told him to leave negotiations to him saying, "the best thing is for you not to see the owner because if you go he would see you are so anxious about it we won't be able to get it at that price." Hyman says he asked Burmeister if he would have to pay him a commission and Burmeister said he would not, that they always got the commissions "from the other side."

The position of the defendant Burmeister seems to be that having learned that Hyman wanted the property in question and was willing to pay $11 000 for it, he had the right to buy it himself for $9,50 and then turn it over to Hyman for the price of $11,000, which had been agreed upon.

In our opinion that position is untenable by reason of the fact that the evidence shows that Burmeister was the agent of Hyman to purchase the property,

notwithstanding the fact that when Hyman asked as to whether he would have to pay a commission on the deal, Burmeister said he would not, that they "always got commissions from the other side." When Hyman told Burmeister he wanted to procure the property in question and asked him to get a price on it and Burmeister did so, or purported to do so, and reported the price the owners were asking, he became the agent of Hyman in the transaction and owed him all the duties of an agent, and if he, after Hyman agreed to a price of $11,000, went out and purchased the property himself at a lower figure than that and then had it transferred to Hyman at the price he had agreed to pay, he is liable for the difference in this action. The liability would attach to Kircher if the jury believed from the evidence that the latter took title from the owner Hanson and then conveyed to Hyman with knowledge of and for the purpose of furthering Burmeister's scheme. We cannot say from the record that the jury might not have so found from the evidence, notwithstanding Kircher's testimony to the effect that he took title to the property in question at the request of Burmeister as an accommodation to him and that he knew nothing about the particulars of the transaction. The evidence shows that Kircher was Burmeister's uncle. The issues should have been submitted to the jury as to both defendants. Even if the jury found the issues in favor of the defendant Kircher, they might have found them in favor of the plaintiff as to the defendant Burmeister if, in their judgment, the evidence warranted it. The action was in tort. In an action on the case in the nature of a conspiracy, the judgment may be against a single defendant without proof of the conspiracy. The gist of such an action is not the conspiracy alleged, but the tort committed against the plaintiff, and the damage suffered by him as a result of such tort. When the tort committed and the damage

resulting therefrom proceed from a series of connected acts, the averment that they were done by several in pursuance of a conspiracy does not so change the nature of the action, that if the wrongful acts are shown to have been done by one only, it cannot be maintained against him alone, and the other defendants exonerated. 8 Cyc. 573-674; *City of Boston v. Simmons,* 150 Mass. 461. If a plaintiff fail in the proof of a conspiracy or concerted design, he may yet recover damages against such of the defendants as are shown to be guilty of a tort, resulting in damages to him. The charge of conspiracy, where unsupported by the evidence, will be considered mere surplusage, not necessary to be proved to support the action. 8 Cyc. 647; *Doremus v. Hennessy,* 62 Ill. App. 391; *Martin v. Leslie,* 93 Ill. App. 44.

For the reasons stated we are of the opinion that the trial court erred in taking the case from the jury at the close of the evidence and therefore the judgment of the Circuit Court is reversed and the cause is remanded to that court for a new trial.

*Reversed and remanded.*