LAURA STEMM *et al.* Appellees, *vs.* EDWARD J. GAVIN, Appellant.

*Opinion filed October 26, 1912.*

1. PLEADING—*effect where defendant answers after overruling of demurrer.* A defendant, by answering, waives the right to assign error on the overruling of his demurrer to the bill; but upon the final consideration of the whole case, if it appears that the complainant is not entitled to the relief sought, the defendant may have the benefit of the same point raised by the demurrer.

2. SAME—*failure to deny allegation in bill is not an admission of its truth.* The failure of the answer to deny an allegation in the bill or supplemental bill is not an admission of the truth of the allegation and does not dispense with the necessity of the complainant proving the allegation.

3. PRINCIPAL AND AGENT—*agent cannot deal in the subject of the agency on his own account.* Agents are held to the strictest fairness and integrity, and in equity an agent is disabled from dealing in the matter of the agency on his own account, and will be compelled to transfer the benefit of his contract to his principal.

4. SAME—*agent must account for profit to himself from violation of his duty.* Any personal benefit obtained by an agent in violation of his duty will be held to inure to the benefit of the principal, and if the agent makes any profit to himself by virtue of his position he must account therefor as for a trust.

5. SAME—*when the rule that one who seeks to rescind must rescind in toto does not apply.* In a suit to compel the defendant to surrender unauthorized profits which he had gained while acting as agent for the complainant in a land trade, the rule that one who seeks to rescind a contract must rescind *in toto* has no application, and the complainant is not required to rescind the entire transaction and offer to return the land to the party from whom he obtained it.

6. SAME—*principal electing to take benefit of agent's transaction must take it as it was made.* If the principal elects to take the benefit of a transaction by his agent in violation of duty he must take it as made, and if the agent was obliged to pay an illegal charge to cover usury on the loan he made to carry out the transaction, he is entitled, on the accounting with the principal, to a credit for such illegal payments.

APPEAL from the Circuit Court of Livingston county; the Hon. G. W. PATTON, Judge presiding.

A. C. NORTON, and F. A. ORTMAN, for appellant.

E. A. SIMMONS, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On June 11, 1909, E. H. Stemm filed his bill in the circuit court of Livingston county asking the court to decree that he was the owner of certain property in Pontiac, in said county, which he alleged had been wrongfully acquired by Edward J. Gavin, the appellant, while his agent and assuming to act for him as such, and that the appellant be compelled to re-convey said property to him. The defendant, after demurring to the bill and his demurrer being overruled, answered, denying that he acquired the property as agent of the complainant or had been guilty of any violation of the obligations of his agency. On December 10, 1909, the issues were referred to the master in chancery. On March 4, 1911, the master filed his report, finding that the material allegations of the bill had been proved, and recommending that the defendant be required to convey the property to the complainant and to account for the rents and profits arising therefrom. On March 18, 1911, on petition of the appellees stating that Stemm died intestate on February 12, 1911, and that they were his widow, heirs-at-law and administrator, they were substituted as complainants. On June 28, 1911, a decree was

255 – 31

entered overruling exceptions to the master's report and decreeing in accordance with it and again referring the cause to the master in chancery to state an account. The defendant prayed an appeal, and the prayer was taken under advisement until the final decree upon the accounting. On February 12, 1912, the master filed his second report of the accounting, and on February 16, 1912, some exceptions were sustained and others overruled and a final decree was entered. The prayer for an appeal from the first decree was then allowed, and an appeal was also allowed from the final decree and an appeal was perfected.

It is contended that the court erred in overruling the demurrer to the bill, and that a demurrer is not waived by an answer where the question raised is whether, upon the whole case, the complainant is entitled to the relief asked for. This position is not correct. A defendant, by answering, waives the right to assign error on the overruling of the demurrer, but upon the final consideration of the whole case, if it appears that the complainant is not entitled to the relief sought, the defendant may have the benefit of the same point raised by the demurrer, and he would have that if he had never demurred. *Gordon* v. *Reynolds,* 114 Ill. 118; *Cline* v. *Cline,* 204 id. 130; *Baumgartner* v. *Bradt,* 207 id. 345; *Bauerle* v. *Long,* 165 id. 340.

It is also claimed that no relief could be granted because the averment of the supplemental bill that Stemm died and the appellees are his widow and heirs-at-law was not proved. The reply made by counsel to this argument is, that it was not necessary to make the proof because there was no denial of such facts in the defendant's answer. Counsel is in error in this, because in equity the failure to deny an averment of the bill is not an admission of its truth but the averment must be proved. The question, however, was settled on the petition of the appellees, in which they alleged the facts under which they were substituted as complainants.

The following facts appear from the evidence: E. H. Stemm owned 317 acres of land in Canada and two pieces of property in Pontiac. The defendant, Edward J. Gavin, was a real estate agent in Pontiac having the agency for sale of lands·in South Dakota. Stemm employed the defendant as his agent to trade or sell his property for South Dakota land, and they went to Dakota and looked at land but did not see the land involved in this suit. Afterward the defendant proposed a trade for a half section of land, supposed to contain 320 acres, owned by E. L. Houghton, of Gary, South Dakota, and he wrote a contract, dated November 24, 1908, by which Stemm agreed to convey to Houghton his property in Canada and Pontiac at a valuation of $11,725, Stemm to receive $725 cash and a credit for $11,000 as a payment on the land in Dakota and to give a trust deed for $8200 for the balance of the purchase price, and Houghton was to convey the Dakota land for the consideration of $19,200. Stemm signed the contract and the defendant submitted it to Houghton, who rejected it, saying that he would consider a cash offer only, but he offered to sell the land for $35 an acre, cash, and to allow the defendant a commission of $2 per acre for selling it. The defendant was to have a commission from Stemm, and he represented to Houghton that he was the agent of Stemm, but said that he might make some arrangement for a cash purchase of Houghton's land with a payment of $3000 down, out of which he was to have $640 commission and with a trust deed back for $8200. The defendant devised a plan to get Stemm's property for himself and applied to different persons to borrow $3000 with the property as security, and finally made an arrangement with C. K. Brittenham, of Pontiac, by which Brittenham was to take a deed of Stemm's property as security for a loan to the defendant. Houghton made a deed of the Dakota land to Stemm, and Stemm executed a trust deed on it for $8200 for part of the purchase money. Under the

arrangement of the defendant with Houghton there was to be a cash payment of $3000, out of which the defendant was to have $640 commission, and the defendant asked Stemm to make a deed of his property to Brittenham, representing to Stemm that he was borrowing the money from Brittenham to get a loan for Houghton on the property which Stemm was exchanging. He said that a certain amount of money must be raised in the deal, and that Brittenham was furnishing the money and getting a deed as security until the money would be paid. Stemm conveyed his property to Brittenham, supposing that he was exchanging the land with Houghton on the terms represented to him. The defendant received $3000 from Brittenham, out of which he paid $2360 to Houghton, retaining his commission of $640. Stemm was to have $725 in cash in the trade, and the defendant paid him the balance of $640 raised by the loan and retained as commission, and added $85 himself to make up the $725. Stemm paid the defendant $206 commission for making the trade. About three months after the loan from Brittenham the defendant re-paid it, with $45 interest, and $200 that was called a commission to Brittenham. Brittenham conveyed the property to the defendant and the defendant traded it to George R. Beach for property in Pontiac, which he mortgaged for $2500 that went to Brittenham on the loan, and the balance to make the $3245 from Brittenham the defendant raised from other sources. Beach took the Canada land at $20 an acre and fixed prices on his property in Pontiac amounting to $6340.

There was a controversy at the hearing as to alleged concealment and misrepresentations by defendant. Stemm testified that the defendant told him the Dakota land was a fine farm, well improved, 250 acres under the plow and the balance meadow, and all tillable; that it was worth $60 an acre and contained 320 acres; that they got $1500 rent for it, and that the cash value was $60 an acre. The

fact was that the entire produce for one year amounted to $1500, of which the tenant had half, and other years the entire product was less than that. The farm contained only 306 acres instead of 320. The defendant denied that he made any statement as to the number of acres, and as to the value said, that Stemm was putting in his property at inflated prices, and that he told Stemm that $60 an acre would be about right as a valuation in the trade compared with the prices put on his property. In view of the actual value of Stemm's property, as shown by the evidence, the defendant's version of his representations concerning value is much more probable than the testimony of Stemm. The defendant wanted Stemm to go and see the Dakota land, and we do not find that there was any false or fraudulent representation by the defendant as to that land. The defendant claimed that Stemm understood fully that he was getting the Dakota land and disposing of his own, and that it made no difference to him what became of his land if he got the South Dakota land that he wanted and at the price agreed on. We do not think that position can be sustained or that Stemm would have completed the transaction if he had known that his agent was acting for himself and securing the property. Our conclusion as to the fraudulent representations concerning the Dakota land does not lead to a reversal of the decree, because the alleged representations were not the basis of any relief granted. The only substantial ground of relief was, that the defendant, while the agent of Stemm and professing to act in his interest, was really dealing for himself. When Houghton refused to make a trade the defendant originated a scheme by which he obtained the property by borrowing money from Brittenham and having the property conveyed to Brittenham, to be conveyed to him on re-payment of the money, and by trading with Beach he got the property of his principal for a small amount above the encumbrance that he put upon the property received from Beach.

It appears to us that the decree was right so far as it gave to the complainants the benefit of the transaction by the defendant. Agents, and those acting in a fiduciary capacity, are held to the strictest fairness and integrity, and in equity an agent is disabled from dealing in the matter of the agency on his own account and will be compelled to transfer the benefit of his contract to his principal. Any personal benefit obtained by an agent in violation of his duty will be held to inure to the benefit of the principal, and if the agent makes any profit to himself by virtue of his position he must account therefor as for a trust. (*Dennis* v. *McCagg*, 32 Ill. 429; *Davis* v. *Hamlin*, 108 id. 39; *Salsbury* v. *Ware*, 183 id. 505.) It was in accordance with this principle that the defendant was required to convey the property which he held as the result of the transaction, subject to the mortgage for $2500 which he put upon the property to assist in paying Brittenham.

It is contended that there could be no relief under the averments of the bill because there was no offer to restore to the defendant the Dakota land which Stemm received in the transaction, and that the decree was wrong for failure to require such restoration. The defendant never had the Dakota land or any interest in it. The purchase price was made up, in part, by the notes and trust deed of Stemm and most of the balance by the mortgage on the Pontiac property, which the decree ordered conveyed subject to the mortgage. If the accounting was correct, everything was restored to the defendant which he put into the transaction. The rule that one who seeks to rescind a contract must rescind *in toto* could not be applied to this suit, which was brought to compel the defendant to surrender the profits which he had gained.

On the second reference the master, in stating the account, credited the defendant with $3085, less the mortgage of $2500 on the Beach property and a mortgage of $50 on vacant lots, the balance of credit being $590.93, and

he charged him with rents amounting to $363.07, leaving a balance of $227.86. The master refused to allow the $245 which the defendant paid to Brittenham for commission and interest on the loan, and this, we think, was wrong. If the complainants elected to take the benefit of the transaction they ought to take it as it was made, and the fact that the $200 was illegitimate and a charge to cover usury would not excuse them from refusing to pay it. The defendant was only able to get the money by submitting to that illegal charge. It is said that that matter could not be considered because there was no objection to the finding in the first report. The accounting had not then been reached, and when the court decided against the defendant and ordered an accounting the question what credit should be allowed was open. The first objection to the report was that the $245 was not allowed.

It is objected that the court allowed the defendant nothing for looking after and managing the property during the time he held it before his appointment as receiver. During the pendency of the suit he was appointed receiver and was allowed for his services, but he collected as rents, before his appointment, $728. He was not entitled to anything for collecting rents while he was secretly and wrongfully withholding the property from Stemm and his heirs.

The decree is affirmed except as to the balance due on the accounting, and as to that it is reversed and the cause is remanded to the circuit court, with directions to allow the defendant a credit of $245 at the date of the payment to Brittenham, with five per cent interest from that date. The appellees will pay one-fifth of the cost of the appeal and the appellant the remainder.

*Affirmed in part and remanded, with directions.*