Mary Moore, Appellant, v. Harold A. Pinkert, et al.,
Joseph M. Dvorak and George Kotas, Appellees.

Gen. No. 48,015.

First District, Third Division.
November 23, 1960.
Rehearing denied and opinion modified
January 12, 1961.

Mark J. Satter, of Chicago, for appellant.

Clarence F. Martin, of Chicago, for appellee Joseph M. Dvorak, and Harold J. Budowsky, of Chicago, for appellee George Kotas.

MR. JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken from summary judgments entered in the Circuit Court of Cook County against Mary Moore and in favor of Joseph M. Dvorak and George Kotas. Mary Moore, hereinafter referred to as the plaintiff, had brought an action to recover money which she alleges was wrongfully paid to defendant Dvorak in connection with a second mortgage allegedly procured by fraud and deceit. The plaintiff claims additional moneys paid to Kotas by virtue of the same fraud and also asks to have removed as a

cloud on title to real estate a separate second mortgage held by Kotas.

The case grew out of a real estate transaction. In the original complaint filed by the plaintiff, Harold Pinkert, Joseph Dvorak, Anthony Broccolo and George Kotas were all named as parties defendant. Motions for summary judgment were filed by Pinkert, Dvorak and Kotas. On the hearing on the motions the court entered an order permitting the plaintiff to file an amended complaint and taking the motions for summary judgment under advisement. Upon the filing of the amended complaint plaintiff dismissed out Pinkert and Broccolo. Defendants Dvorak and Kotas filed petitions asking that summary judgments be entered upon their motions previously filed.

The court entered a summary judgment in favor of defendant Kotas, in which judgment order it stated that the admissions of the plaintiff in her deposition and in the amended complaint negative the existence of a cause of action by the plaintiff against Kotas. In the judgment order in favor of Dvorak the court found that the amended complaint did not state an action against Dvorak and that the deposition of the plaintiff contained admissions negativing the existence of any liability of Dvorak to the plaintiff.

The instant lawsuit is based on an attempt of the plaintiff to recover money from those who allegedly profited by a series of complicated financial transactions in connection with the purchase of a home and who have in their possession money in equity and good conscience belonging to her.

In order for a full understanding of the case it was necessary for us to go to the record. This we are not required to do. However, because of the extraordinary character of the case and the flagrant disregard of the law and the principles of fair dealing

323

should the allegations in the complaint be true, we prefer to determine the propriety of the entry of the summary judgments, disregarding the method in which the case has been presented to this court. Mc-Key v. McKean, 384 Ill. 112, 115, 51 N.E.2d 189; Department of Finance v. Goldberg, 370 Ill. 578, 583, 19 N.E.2d 593; Reiter v. Illinois Nat. Casualty Co., 328 Ill. App. 234, 265, 65 N.E.2d 830.

The summary judgments were entered on defendants' motions before the defendants had filed any pleadings. The 1955 amendment to the Civil Practice Act (Ill. Rev. Stat. 1955, chap. 110, par. 57) provided that a defendant might make a motion for summary judgment "at any time." That amendment was modeled on Federal Rule 56. Federal cases interpreting that rule hold that a defendant may file a motion for summary judgment before he files any pleadings. Gifford v. Travelers Protective Ass'n of America, 153 F.2d 209; Lindsey v. Leavy, 149 F.2d 899. The case before us illustrates the danger of the indiscriminate application of such rule. The purpose of summary judgment procedure is to determine whether there is a genuine issue of fact involved in the case. Allen v. Meyer, 14 Ill.2d 284, 152 N.E.2d 576; Diversey Liquidating Corp. v. Neunkirchen,. 370 Ill. 523, 19 N.E.2d 363. Ordinarily the issues are made up by the pleadings. From an inspection of the pleadings the court can determine whether or not a factual issue is raised. On summary judgment proceedings the court considers the pleadings, the affidavits and the entire record to determine whether or not it can be said that a material dispute exists as to the facts. People ex rel. Sharp v. City of Chicago, 13 Ill.2d 157, 148 N.E.2d 481. When there is no answer filed and the defendant petitions for a summary judgment, the court must apply the same rule, and among other things which the court can and should consider is whether or not the com-

plaint, standing alone, states a cause of action. It would seem better to first test the validity of the complaint by a motion to strike. No such motion was made in this case and in the Dvorak judgment order the court holds that the complaint failed to state a cause of action. There was no answer filed to the complaint, inartificially drawn as it was. In this proceeding all uncontradicted allegations made by the plaintiff must be taken as true (Roberts v. Sauerman Bros., Inc., 300 Ill. App. 213, 20 N.E.2d 849), unless there is a showing made in the affidavits and other documents in the record that the allegations cannot be proved. Loving v. Allstate Ins. Co., 17 Ill.App.2d 230, 149 N.E.2d 641.

We will first consider the judgment entered against defendant Kotas. In her verified amended complaint the plaintiff alleges that on or about June 1, 1953 she, desirous of purchasing real estate, called at the office of the Buchanan Realty Company. She was referred to George Kotas, who held himself out as a real estate broker although he had no license. Kotas called attention of plaintiff to several parcels of real estate, and about June 15, 1953 exhibited to plaintiff the property commonly known as 1836 South Millard Avenue, Chicago. Kotas took the plaintiff to call on the owner of the property to examine the premises. Kotas told the plaintiff that the owner would sell the property for $20,000 and that such price was fair and proper. He also stated to the plaintiff that he would secure for her benefit a first and second mortgage with which to finance the purchase. It was agreed that the plaintiff was to make a down payment of $2,500 and that Kotas would arrange for the execution of a first mortgage of $11,500, which was in favor of General Savings and Loan Association (hereinafter referred to as "General"), of which Harold Pinkert was president and Joseph Dvorak the attorney and general counsel. A second mortgage was procured

by Kotas for $6,000 and executed by the plaintiff. As a matter of fact the seller had only asked $14,000 for the property.

In her amended complaint plaintiff further alleges that a substantial portion of the $6,000 mortgage was paid to Dvorak; that sometime in January 1954 Kotas offered to construct for the plaintiff a basement apartment in the premises, for which she paid to Kotas various sums of money; that Kotas induced her to execute a promissory note in favor of General in the amount of $2,874.50, stating to her that she owed him such money; and that this was grossly in excess of the value of work done by Kotas. It is also alleged that she made in addition to her regular mortgage payments, certain payments totaling $1,811, which payments were made to Kotas and accepted by him for the purpose of making payments to General upon the first mortgage, as well as upon the $6,000 second mortgage, but which payments were kept by Kotas in fraud of the plaintiff; that in October 1956 Kotas stated to her he would arrange refinancing of the property and he procured a new first mortgage for $14,000 with the Victory Mutual Life Insurance Company (hereinafter referred to as "Victory"), payable at $136.62 per month, and in connection with the application Kotas stated that the cost of the loan was $900 and demanded that she pay him that money before the loan could be approved; that she paid the money to him; that the property was accordingly refinanced under his direction; and that he refused to deliver to her a statement of the disbursements of the loan from Victory, but retained the sum of $900 as his own profit. The amended complaint further alleges that Kotas had done some plumbing work on the premises and was paid certain sums of money by the plaintiff from time to time, and that on March 15, 1958 Kotas advised plaintiff that she had signed

an additional second mortgage in his favor in the amount of $3,500 and demanded payment thereon. The complaint prayed that she may have judgment against Kotas for various sums of money improperly received by him from plaintiff; that the second mortgage for $3,500 may be removed as a cloud on the title of the plaintiff to the premises; and that an accounting be had with Kotas concerning the value of the work which he did on the premises and that the court enter judgment accordingly.

Defendant Kotas filed a motion for a summary judgment and supported the motion by an affidavit in which, among other things, he denies that there was any fiduciary relationship existing between him and the plaintiff, and states that the plaintiff was told that the property could be purchased upon her executing a first and second mortgage and making a down payment, all of which would total the sum of $20,000, to which the plaintiff agreed, as she admitted in her deposition, as well as in open court in response to a question by the court, that she knew the purchase price was $20,000 and the figure at that time was agreeable to her. It is further alleged in the affidavit that the plaintiff, in answer to questions at the time her deposition was taken, admitted that the "second mortgage was pertinent to the full transaction," and it is further alleged in the affidavit that the plaintiff in her verified complaint stated that there was an additional second mortgage in favor of the affiant for $3,500, about the execution of which she knew nothing. In response to this latter statement of the plaintiff, to prove that she did know of the existence of the mortgage, Kotas merely attached to his affidavit, without further explanation, certain exhibits consisting of the second mortgage note in the amount of $3,500 and contractors' bills amounting to $1,937.32. After the amended complaint was filed Kotas filed a

petition praying for summary judgment in accordance with his motion and affidavit theretofore filed, and in the petition he sets out that the recitals in the amended complaint that a fiduciary relationship existed between the plaintiff and himself are conclusions and set forth no facts from which these conclusions may be drawn, and he states that the amended complaint fails to correct or overcome the admissions of the plaintiff in her deposition and in open court.

■ The first question to be determined is whether or not the complaint contains sufficient allegations to show that Kotas was the agent of the plaintiff. The plaintiff relied on Kotas to conduct negotiations with the seller of the property. He stated to her that he would deal honestly and fairly with her and without fraud or overreaching. On oral argument it was admitted that the real estate commission was to be paid by the plaintiff to Kotas. Without such admission, the uncontradicted allegations are sufficient to establish the agency of Kotas. Hyman v. Burmeister, 216 Ill. App. 98, 100; Lerk v. McCabe, 349 Ill. 348, 360, 182 N. E. 388.

■ In our opinion, considering the record as a whole, there is no question that an agency relationship existed between the plaintiff and Kotas. Agents and those acting in a fiduciary capacity are held to the strictest fairness and integrity, and an agent is disabled from dealing in the matter of the agency on his own account and will be compelled to transfer the benefit of his contract to his principal. Stemm v. Gavin, 255 Ill. 480, 99 N. E. 663. "The rule is well established in equity that the relation existing between principal and agent for the purchase or sale of property is a fiduciary one, and the agent in the exercise of good faith is bound to keep his principal informed on all matters that may come to his knowledge pertaining to the subject matter of the agency. (Rieger

v. Brandt, 329 Ill. 21.) An agent must not put himself, during the continuance of his agency, in a position adverse to that of his principal. . . . If a party employs an agent to make a purchase of land he is entitled to all the skill, ability and industry of such agent to make the purchase on the best terms that can be had. (Cottom v. Holliday, 59 Ill. 176.)" Lerk v. McCabe, supra.

In the brief presented in this court the theory of defendant Kotas is that the amended complaint did not state a cause of action against him because the deposition of the plaintiff and the pleadings of the parties negative both the fiduciary relationship and any fraud and deceit, and Kotas in his brief states:

> "At no point in her pleadings, deposition or argument does the plaintiff overcome or contradict the fact that she was advised that for her to buy the property with her limited funds, she would have to execute a first and second mortgage all of which would make for the sum of $20,000.00. In her motion to strike the affidavit of Kotas (R. 83), the plaintiff does not deny that she was so advised. In fact, she affirmed this in her replies upon the interrogation of the Chancellor in open court on September 8, 1958.
>
> "Throughout the record and her brief, the plaintiff continually alleges by conclusion that the second mortgage was unnecessary in enabling her to purchase this property. Yet, when Kotas stated in his affidavit for summary judgment that she admitted in her sworn deposition that the second mortgage was pertinent to the full transaction, the plaintiff does not deny this fact in her motion to strike the affidavit of Kotas, but instead treats the matter with her ever present silence when the true fact is shown to the detriment of her cause of action."

■ This defense is truly an extraordinary one, and in our opinion is unsupported either by reason or authority. The theory advanced is that Kotas can clear himself of any liability for wrongfully getting from the plaintiff $6,000 if he had falsely told her that the $6,000 was included in the price of the property and it would be necessary for her to obligate herself for such amount in order to acquire the property and she had consented so to do. It is just as logical to say that an entrepreneur selling a sham gold brick to an innocent from the hinterlands can defend himself by saying that he never asked any greater price than was agreed to be paid to him by the victim. There is nothing in the affidavit that negates the factual allegations in the complaint establishing an agency and a fiduciary relationship. The only defense set up is the one to which we have just referred. That is no defense. The plaintiff was also entitled to an explanation of the disposition of the money obtained from her by Kotas, as well as an accounting from Kotas as to expenditures which he allegedly made. The court erred in entering judgment in favor of Kotas.

A summary judgment was also entered by the court in favor of Dvorak. In plaintiff's amended complaint she alleges that he is an attorney and during the period complained of was the attorney for General; that he was a business associate of defendant Kotas; and that Dvorak claimed ownership of the $6,000 second mortgage note involved. She further alleges that Dvorak gave to her no consideration whatsoever for the mortgage, nor did he give any consideration to any person to whom she was indebted in the amount of $6,000; that Dvorak issued his check in the amount of $2,850 payable to Pinkert, who credited the sum of $634.21 to plaintiff's "Loan Progress Account"; that no other sum was credited to her; that she did

330

not know of such payment and no demand was made upon her for such payment; and that in case a demand had been made upon her she had sufficient funds in her possession to satisfy such demand. The plaintiff also alleges that she received no part of the $2,850; that she made payments on the $6,000 mortgage at the office of General totaling $1,715, all of which amount was credited to the account of Dvorak; that in addition thereto the sum of $3,750 was paid to Dvorak out of the proceeds of the loan from Victory, which sum was paid to him at the instruction of Kotas without authorization from her; that at all times Dvorak concealed from plaintiff ownership by him of the said second mortgage; and that the said mortgage was the secret profit of one or more of the defendants. She also alleged that Dvorak's acts were in violation of a confidential and fiduciary relationship.

Dvorak's motion for summary judgment was supported by the affidavit of his attorney. In the affidavit it was stated that plaintiff had testified in her deposition that prior to the filing of the suit she had never met Dvorak and at the time of signing the original contract of purchase she was willing to buy the property for $20,000, and that Dvorak had at no time represented to her that he would respect their confidential and fiduciary relationship. The affidavit further sets out that in the hearing, upon interrogation by the court, she stated that she knew at the time of purchase that the price was to be $20,000. The court in his judgment order states that the amended complaint does not state a cause of action against Dvorak and that plaintiff's admissions conclusively negative the existence of any liability of Dvorak to the plaintiff.

The plaintiff's complaint with respect to Dvorak could have been drawn with greater clarity and

331

definiteness. Certain allegations in the complaint relating to a fiduciary relationship existing between them were negatived by admissions she made in her deposition. Among other allegations of the complaint which remain uncontradicted are allegations that Dvorak gave no consideration to the plaintiff nor to any person to whom she was indebted in the amount of $6,000; that she made payments to Dvorak amounting to $5,465 ($1,715 at the office of General, which entire sum was credited to the account of Dvorak, and $3,750 from the proceeds of the loan from Victory, which sum was paid to him at the instruction of Kotas without her authorization); and that the $6,000 mortgage was the secret profit of one or more of the defendants.

Prior to the entry of the summary judgments and prior to the dismissal of Pinkert from the case, defendants Pinkert and Dvorak had filed sworn answers to interrogatories propounded by plaintiff. From the interrogatories it appears that the second mortgage was dated August 8, 1953. The first mortgage to General was dated August 7, 1953, and it is worthy of note that that mortgage was notarized by Ruth King, the nominee in the second mortgage. The deed was also dated August 7th, which was the approximate date of closing the deal. It does not appear from the record who had the initial possession of the $6,000 mortgage. Either Dvorak had it or he later obtained it from a person or persons unascertainable from the record. There is no explanation in the record concerning with whom or how the final price of $2,850 was negotiated.

The affidavit of Dvorak's attorney, filed in support of the motion for summary judgment, together with the admissions made by the plaintiff in her deposition, does negate the allegation that there was a fiduciary relationship between Dvorak and

332

the plaintiff. However, if one accepts the fruits of fraud knowing of the means by which they were obtained he is liable even though he did not personally participate in the fraud. 37 C. J. S., Fraud, sec. 61b; Beidler v. Crane, 135 Ill. 92, 25 N. E. 655; Callner v. Greenberg, 376 Ill. 212, 33 N.E.2d 437; Majewski v. Gallina, 17 Ill.2d 92, 160 N.E.2d 783. In the latter case the court says: "Moreover, it is of no consequence whether the conveyance was to the fiduciary or to another. The principle is set forth in Lord Eldon's statement, quoted in the Addis case [Addis v. Grange, 358 Ill. 127] at page 134: 'Let the hand receiving it be ever so chaste, yet if it comes through a corrupt channel the obligation of restitution will follow it.' "

From the record at the time the summary judgments were entered, if we consider the uncontradicted facts, a fiduciary relationship existed between plaintiff and Kotas, and by means and through the abuse of that fiduciary relationship without consideration a mortgage for $6,000 was obtained on the premises of the plaintiff and on account of such mortgage some $5,465 was paid to Dvorak. Dvorak, in his answers to the interrogatories, makes statements which, standing alone and without explanation, seem incredible, the statements being that he did not know who the owner of the second mortgage was on August 8th; that he acquired the mortgage on or about August 18th; that he did not know from whom he purchased it; and that he paid the sum of $2,850 for the mortgage, which payment was made by check on which Harold A. Pinkert was the payee. He further states that he has known Kotas approximately ten or twelve years and that he purchased from Kotas only one second mortgage secured by the property in question. Pinkert, in his answers, states that he never was the owner of the second mortgage; that he cashed the $2,850 check

at General and the real owner of the $2,850 was Dvorak; and that he received for Dvorak the second mortgage note and trust deed.

From the record this court can only assume that the $6,000 mortgage fell like the gentle rain from heaven upon the closing table at General. There is no admission that Kotas received the $2,850. There is nothing in the record that indicates that the plaintiff knew that $634.21 was to be credited to her account at General or that there was any reason for so crediting the money to her account there.

The uncontradicted facts are that Dvorak received some $5,465 from the plaintiff for the mortgage, and Dvorak states in his answers to the interrogatories that he paid the sum of $2,850 for the mortgage by a check made payable to Pinkert. Pinkert says that all he did was cash the check and that the real owner of the $2,850 was Dvorak. He further states that he received for Dvorak the second mortgage note and trust deed, but he does not state from whom. Dvorak's check in payment of the mortgage was dated August 7th. Dvorak has stated that on August 8th he did not know who the owner of the mortgage was and that the mortgage was acquired by him on August 18th but he does not know from whom he purchased it. It seems incredible that if the check was dated on August 7th there would not have been some negotiation with the owner of the mortgage prior to that time to indicate the amount for which the mortgage could be obtained. No explanation has been offered as to why the owner of the mortgage, if he acquired it for $6,000, would be willing to sell the mortgage to Dvorak for $2,850 at or about the same time he acquired it. The transaction, to say the least, seems to be unusual in its entirety. There is sufficient in the record to raise a strong imputation of Dvorak's knowledge of Kotas' conduct concerning the plaintiff

and the mortgage. If on a trial the allegations are substantiated, and if it is proved that Dvorak had knowledge thereof he is liable for the money paid to him on account of the mortgage. The plaintiff gave defendants money. That fact is established by all the evidence. As was said in Gliwa v. Washington Polish Loan & Bldg. Ass'n, 310 Ill. App. 465, 34 N.E.2d 736, at p. 479:

> "Defendant undertakes to interpose merely technical defenses . . . . Defendant's affidavits leave any meritorious defense it may have a matter of mystery. . . . For some reason it fails to set forth the facts from which that ultimate question could be determined. . . . The facts should have been set up. This was not done. Defendant's affidavits . . . leave its defense a matter of mystery and conjecture."

The affidavit filed in support of Dvorak's motion for summary judgment was not sufficient to show that the plaintiff would be unable to prove her case against him.

We are not passing on the facts in the case, which must be determined in a trial. Our consideration of the facts has been limited to a determination of the propriety of entering summary judgments, and it is our holding that upon the record before us the summary judgments should not have been entered.

The judgments are reversed and the cause remanded with directions to deny defendants' motions for summary judgment, to require the defendants to answer the complaint, and for further proceedings consistent with the views expressed herein.

Reversed and remanded with directions.

SCHWARTZ, P. J. and DEMPSEY, J., concur.