BEATON & ASSOCIATES, LTD., Plaintiff-Appellee, v. JOSLYN MANU-FACTURING & SUPPLY COMPANY, Defendant and Counterplaintiff-Appellant (John L. McGinley, Jr., Defendant and Counterplaintiff-Appellee; Wilbur L. Beaton, Sr., *et al.,* Counterdefendants-Appellees).

First District (4th Division) No. 85—3272

Opinion filed July 30, 1987.—Rehearing denied September 22, 1987.

Reuben & Proctor, of Chicago (William G. Schopf, Jr., and Andrew Butz, of counsel), for appellant.

Patrick J. Leston, Ltd., of Glen Ellyn (Patrick J. Leston and Maureen C. Strauts, of counsel), for appellee John L. McGinley, Jr.

Clausen, Miller, Gorman, Caffrey & Witous, of Chicago (James T. Ferrini, Paul D. Sheldon, and Ivar R. Azeris, of counsel), for other appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Beaton and Associates, Ltd., brought an action in the circuit court of Cook County against defendants, the Joslyn Manufacturing and Supply Company, and John L. McGinley. Plaintiff sought damages and other relief from Joslyn for services rendered. Plaintiff alleged also that Joslyn interfered with its business relationship with McGinley. Plaintiff additionally alleged that McGinley interfered with the contract between it and Joslyn, and also that McGinley conspired with Joslyn to injure it.

Joslyn counterclaimed, alleging that plaintiff obtained its contract through fraud. Joslyn sought damages for the common law fraud and also sought damages for statutory fraud, punitive damages, attorney fees and costs.

The trial court entered judgment for plaintiff only on the unpaid contract balance of $59,038.18 and entered judgment also for plaintiff on Joslyn's counterclaim. The court, however, subsequently amended

its order and entered judgment for Joslyn on its counterclaim. Although the court found plaintiff guilty of common law fraud, it limited Joslyn's award to $35,170 in actual damages and denied Joslyn an additional $11,022 that it would have paid plaintiff as a result of the fraud. The court also denied Joslyn statutory fraud and punitive damages, attorney fees and costs.

On appeal, plaintiff and McGinley contend that the trial court erred in entering judgment for Joslyn on the counterclaim, or at least was correct in limiting Joslyn's award to the amount that Joslyn actually paid plaintiff rather than the amount it would have paid as a result of the fraud. Joslyn contends on appeal that it should not pay the unpaid contract balance due to the fraud, and that the trial court erred in limiting its award and in denying it statutory fraud and punitive damages, and attorney fees.

We affirm, as modified, and remand.

The trial court found the following facts. Joslyn operated a manufacturing plant of its Electrical Apparatus Division (EAD) at 969 West 37th Place in Chicago, Illinois. The United Steel Workers Union represented the workers at the EAD plant. In early 1979, Joslyn held contract negotiations with a local of the union. At this time, Joseph S. Washburn was a vice-president of Joslyn and its director of industrial relations. Washburn was responsible for conducting the negotiations and planning Joslyn's response to a work strike and related plant security problems.

The record further shows that on February 27, 1979, Washburn resigned his positions with Joslyn, but remained employed by Joslyn as an advisor and consultant to its president. Washburn continued to serve as Joslyn's chief negotiator in the labor dispute at the EAD plant. He also continued to plan for security services if a strike occurred. Washburn received a salary and health insurance benefits from Joslyn. In his written agreement, Washburn promised that he would do nothing detrimental to Joslyn's business.

Washburn subsequently formed J. W. Associates, Inc., a privately held corporation in the business of labor consulting. Joslyn provided no offices for Washburn; he maintained offices for J. W. Associates at his home. Joslyn knew of Washburn's consulting firm.

Wilbur L. Beaton, Sr., and Wilbur L. Beaton, Jr., represented plaintiff, Beaton and Associates, Ltd., an investigation and security service firm. In early April 1979, Washburn contacted plaintiff concerning the possibility of Joslyn's obtaining from plaintiff armed guards and related strike security services. Washburn told plaintiff that he was a labor consultant, had his own business and referred to

Joslyn as his client; he distributed business cards advertising J. W. Associates, Inc.

Plaintiff chose John L. McGinley, Jr., to supervise the proposed strike security operation for the plant. McGinley had done strike security work previously for plaintiff. On April 16, 1979, Washburn, Beaton, Jr., and McGinley met and discussed security service for Joslyn during the anticipated strike. They eventually agreed that plaintiff would charge Joslyn $30 per hour for armed guards, $40 per hour for McGinley's supervision and $100 per hour for plaintiff. Plaintiff would charge Joslyn for equipment at rental cost. Plaintiff additionally charged Joslyn $500 for its survey of the plant to determine its security needs. McGinley and plaintiff eventually agreed, verbally, to a 50% division of the profits. Washburn considered two other security firms, but chose plaintiff.

The record further shows that Washburn, plaintiff and McGinley entered into an additional agreement on April 16, 1979. Beaton, Jr., stated that he gave a 20% bonus to those who referred business to him because the company derived its business entirely from referrals. Plaintiff paid Washburn such a fee: $6 for every hour of labor billed to Joslyn and $100 out of the strike survey fee. Joslyn did not know of this agreement; Washburn, plaintiff and McGinley did not tell Joslyn about it.

On May 6, 1979, the union struck Joslyn's EAD plant. Washburn notified plaintiff of the strike; plaintiff sent McGinley to the plant to establish and supervise plant security. Plaintiff billed Joslyn weekly; Joslyn's payments were weekly. Washburn reviewed the weekly invoices and Joslyn paid them at his approval. A week after the strike began, McGinley requested more money from plaintiff because he was spending more time at the plant than he anticipated. McGinley and plaintiff agreed on a $27-per-hour salary in addition to his 50% share of the profits. The hourly salary came out of plaintiff's $40-per-hour billing for McGinley's time.

In mid-June, Joslyn hired Fred Haynes, a labor consultant, to supervise its strike security and to cut security costs. Shortly thereafter, Joslyn terminated plaintiff's services, effective July 1, 1979. Joslyn then offered the plant security job to McGinley. McGinley told Joslyn that plaintiff owed him money and he feared that plaintiff would not pay him if he accepted the offer. Consequently, Joslyn held back payment of plaintiff's last two invoices, totalling $59,039.18, to insure that McGinley would receive his money. McGinley accepted Joslyn's offer. Plaintiff did not pay McGinley.

Between May 6, 1979, and July 1, 1979, Washburn received from

plaintiff payments totalling $35,170 pursuant to their April 16, 1979, agreement. Had Joslyn paid plaintiff its last two invoices, plaintiff would have paid Washburn an additional $11,022. Joslyn did not know of plaintiff's payments to Washburn and no one told Joslyn about them.

On April 12, 1984, the trial court found the foregoing facts and entered judgment for plaintiff on the contract. The trial court found also that Joslyn did not interfere with plaintiff's business relationship with McGinley. The court likewise found that McGinley did not interfere with the contract between it and Joslyn. Additionally, the court found that plaintiff did not prove the existence of a conspiracy between McGinley and Joslyn. The trial court also entered judgment for McGinley on his counterclaim against plaintiff; the court awarded him his $27-per-hour salary, without interest, out of plaintiff's judgment against Joslyn.

The trial court also found for plaintiff on the counterclaim. The court did not find sufficient "evidence to show that [plaintiff] knew that Washburn was not an independent labor consultant but was an employee of Joslyn." Consequently, the court found no fraud.

On October 9, 1985, however, the trial court amended its findings, concluding that the agreement between plaintiff and Washburn was based on constructive or common law fraud. The court reasoned that Joslyn need not show that Washburn was its employee, but rather only that he was its agent. Washburn, therefore, owed Joslyn a fiduciary duty of loyalty. Consequently, the trial court vacated its earlier judgment for plaintiff on the counterclaim and entered judgment for Joslyn.

The trial court, however, failed to find plaintiff guilty of statutory fraud. The trial court also limited Joslyn's award to the amount that Washburn actually received, $35,170; the court excluded the additional $11,022 that Washburn would have received had Joslyn paid plaintiff's last two invoices. The court also denied Joslyn punitive damages. The trial court entered an amended final judgment order on October 22, 1985, wherein it incorporated all of its prior orders and made final allocations between plaintiff and McGinley. Plaintiff, Joslyn and McGinley appeal.

Joslyn appeals from plaintiff's judgment for the unpaid contract balance of $59,038.18, contending that it should not pay plaintiff due to its fraud. Plaintiff and McGinley dispute their liabilities on Joslyn's fraud claims and all parties dispute the trial court's disposition of those claims. We note that this was a bench trial in which the trial court heard conflicting evidence. Accordingly, we will not disturb the trial

court's findings and substitute our own opinion unless its holding is against the manifest weight of the evidence. *Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 110, 382 N.E.2d 1205, 1210, quoting *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624, 626.

# I

## A

Plaintiff and McGinley first contend that the trial court erred in finding them guilty of common law fraud. They argue that to prevail in an action for fraud, a plaintiff must prove (1) that the defendant made a statement, (2) of a material nature as opposed to opinion, (3) untrue, (4) known by the person making it to be untrue, believed by him to be untrue, or made in culpable ignorance of its truth or falsity, (5) relied upon by the victim to his detriment, (6) made for the purpose of inducing reliance, and (7) such that the victim's reliance led to his injury. Further, the plaintiff must prove the first four elements by clear and convincing evidence. *Gordon v. Dolin* (1982), 105 Ill. App. 3d 319, 324, 434 N.E.2d 341, 345-46.

Plaintiff and McGinley argue essentially that Washburn, rather than they, committed the fraud. Plaintiff argues that it did not intend to deceive Joslyn by its referral fee to Washburn and also that its referral fee did not injure Joslyn since the trial court found that plaintiff billed Joslyn at the going rate. McGinley argues that he made no representations to Joslyn at all, and that mere knowledge of the agreement between plaintiff and Washburn is insufficient to find him guilty of fraud.

Many courts have used the definition of fraud that plaintiff and McGinley cite. Our supreme court, however, has described fraud generally to include all acts, omissions and concealments involving a breach of duty, trust or confidence resulting in damage to another. (*Majewski v. Gallina* (1959), 17 Ill. 2d 92, 99, 160 N.E.2d 783, 788.) Further, the law strictly requires from an agent honesty and loyalty to the interests of the principal. This duty prohibits an agent from not only acquiring personal interests adverse to those of the principal, but also from dealing independently of the interests of the principal to the agent's personal gain in the subject matter of the agency. *Shinpaugh v. Midwest Life Insurance Co.* (1961), 32 Ill. App. 2d 207, 211-12, 177 N.E.2d 426, 428-29, quoting *Blanchard v. Lewis* (1953), 414 Ill. 515, 524, 112 N.E.2d 167, 172.

An agent, thus, must keep the principal informed on all matters of which he has knowledge that pertain to the subject matter

of the agency. The agent breaches this duty not only when he acts adversely to the principal's interest, but also when he conceals facts that involve the principal's advantage. (32 Ill. App. 2d 207, 213, 177 N.E.2d 426, 429.) The record in the instant case shows that Washburn was an agent for Joslyn, planning security services for Joslyn's plant on Joslyn's behalf. The trial court, therefore, correctly found that Washburn committed a fraud on Joslyn by accepting plaintiff's referral fee without informing Joslyn.

■ Plaintiff and McGinley do not escape liability. If a third party "accepts the fruits of fraud knowing of the means by which they were obtained he is liable even though he did not personally participate in the fraud." (*Moore v. Pinkert* (1961), 28 Ill. App. 320, 333, 171 N.E.2d 73, 78.) Plaintiff and McGinley accepted the fruits of Washburn's fraud; they received the Joslyn plant security project from Washburn. Plaintiff argues that Washburn had nearly nothing to do with Joslyn hiring it; rather, Joslyn's plant manager hired it. Plaintiff and McGinley additionally argue that they did not know, and that a court should not have expected them to know, that Washburn was Joslyn's agent, owing fiduciary duties to Joslyn. Thus, plaintiff and McGinley argue, they did not receive the Joslyn project based on Washburn's fraud.

The record shows, however, that plaintiff and McGinley knew that Washburn acted on behalf of Joslyn. Washburn contacted plaintiff and negotiated with it; Joslyn's plant manager merely ratified Washburn's selection. The trial court's finding that plaintiff received the Joslyn security project as a result of its referral fee to Washburn, whom plaintiff and McGinley knew to be Joslyn's agent, was not against the manifest weight of the evidence.

■ McGinley also accepted the fruits of Washburn's fraud; he received his position when plaintiff received the Joslyn project. Thus, both plaintiff and McGinley accepted employment from Joslyn through Washburn as a result of the secret referral fee. We hold, therefore, that the trial court's ruling, finding plaintiff and McGinley guilty of common law fraud against Joslyn, is not against the manifest weight of the evidence.

### B

■ The trial court also found plaintiff and McGinley guilty of constructive fraud. Courts may infer fraud from the relationship of the parties or from the surrounding circumstances regardless of any actual dishonest purpose. We have defined this type of fraud, constructive fraud, as any act, statement or omission that amounts to positive fraud or that courts construe as fraud because of its detrimental effect upon

public interests and public or private confidence. Constructive fraud requires neither actual dishonesty nor intent to deceive. It is a breach of a legal or equitable duty that the law declares fraudulent because of its tendency to deceive others, irrespective of the moral guilt of the wrongdoer. *In re Estate of Neprozatis* (1978), 62 Ill. App. 3d 563, 568, 378 N.E.2d 1345, 1349.

■ Plaintiff and McGinley are both guilty of constructive fraud. The record shows that Washburn breached his fiduciary duty to Joslyn and, thus, is guilty of constructive fraud. Further, plaintiff and McGinley also are guilty of the constructive fraud because they accepted the fruits of the fraud, the Joslyn security project, knowing that they received it as a result of the fraud. (*Moore v. Pinkert* (1961), 28 Ill. App. 2d 320, 333, 171 N.E.2d 73, 78.) We hold that the trial court's ruling, finding plaintiff and McGinley guilty of constructive fraud against Joslyn, in addition to common law fraud, is not against the manifest weight of the evidence.

## II

Joslyn contends that since plaintiff and McGinley are guilty of common law and constructive fraud, then (A) it should not pay plaintiff the unpaid contract balance of $59,038.18. Joslyn additionally contends that the trial court erred in (B) limiting its award to the $35,170 that plaintiff actually paid Washburn and excluding the additional $11,022 that Washburn would have received had Joslyn paid plaintiff's last two invoices, (C) denying it punitive damages, and (D) denying it damages under the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 261 *et seq.*).

## A

■ Joslyn contends that it should not pay plaintiff the unpaid contract balance of $59,038.28 due to the common law and constructive fraud. One induced to contract through the fraud of another may elect to rescind the contract and recover the consideration paid, or affirm the contract and recover the difference between the property received and what he or she would have received but for the fraud. (*In re Estate of Neprozatis* (1978), 62 Ill. App. 3d 563, 570, 378 N.E.2d 1345, 1351.) In this case, plaintiff's payments to Washburn represent the difference between the value of the security services Joslyn received, including Washburn's misconduct in obtaining those services, and what Joslyn would have received but for the fraud.

Joslyn contends, however, that the amount of plaintiff's referral fee to Washburn is a minimal and insufficient measure of damages.

Joslyn argues essentially that since plaintiff paid Washburn in return for the security project, the negotiations between plaintiff and Washburn for plaintiff's billing were a sham and that plaintiff probably inflated its rates. Thus, Joslyn argues, it should not pay the unpaid contract balance since plaintiff probably inflated it due to its fraud.

A plaintiff, as the party seeking to recover, has the burden not only to establish that he or she sustained damages, but also to establish a reasonable basis for computing those damages. A court may not award damages based on speculation or conjecture. Further, a reviewing court will not disturb the trial court's findings as to damages unless those findings are against the manifest weight of the evidence. *Schoeneweis v. Herrin* (1982), 110 Ill. App. 3d 800, 808, 443 N.E.2d 36, 42.

In the instant case, the trial court found that plaintiff's charges to Joslyn were reasonable and "within the limits customarily charged within the industry." Joslyn contends, however, that we should disregard the trial court's finding "as legally irrelevant." This, of course, we cannot do. After reviewing the record, we conclude that the trial court's finding that plaintiff did not overcharge Joslyn was not against the manifest weight of the evidence. Further, the total of plaintiff's payments to Washburn is based on neither speculation nor conjecture; it represents a reasonable basis for computing Joslyn's damages. Therefore, we hold that the total of plaintiff's payments to Washburn, representing the difference between the value of the security services Joslyn received, including Washburn's misconduct in obtaining those services, and what Joslyn would have received but for the fraud, is the proper measure of Joslyn's damages.

### B

As a result of this reasoning and conclusion, we must agree with Joslyn that the trial court should have included in its award of $35,170 the $11,022 that Washburn would have received had Joslyn paid plaintiff's last two invoices. The total of these two amounts, $46,192, represents the difference between the value of the security services that Joslyn received, including Washburn's misconduct in obtaining those services, and what Joslyn would have received but for the fraud. *In re Estate of Neprozatis* (1978), 62 Ill. App. 3d 563, 570, 378 N.E.2d 1345, 1351.

### C

Joslyn contends that the trial court erred in denying it punitive damages. Punitive or exemplary damages are not favored in

the law. Our courts allow them only when a wrongful act is accompanied by aggravated circumstances, including fraud, willfulness, wantonness, or malice. Courts award punitive damages to punish a defendant, teaching him not to repeat his intentional, deliberate and outrageous conduct, and to deter others from similar conduct. (*Anvil Investment Ltd. Partnership v. Thornhill Condominiums, Ltd.* (1980), 85 Ill. App. 3d 1108, 1118-19, 407 N.E.2d 645, 652-53.) Further, the decision to award punitive damages is left to the trier of fact; a reviewing court will not disturb its decision absent an abuse of discretion. 85 Ill. App. 3d 1108, 1121, 407 N.E.2d 645, 654.

After reviewing the record, we conclude that punitive damages are inappropriate in the instant case. Although a court may allow punitive damages based on fraud, the fraud must be an aggravated circumstance. The trial court found plaintiff and McGinley guilty of fraud; Joslyn's action was based on their fraud. Thus, compensatory damages are sufficient punishment. *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 87-88, 174 N.E.2d 157, 165.

Joslyn contends that fraud is a sufficient and independent basis for an award of punitive damages, citing *Four "S" Alliance, Inc. v. American National Bank & Trust Co.* (1982), 104 Ill. App. 3d 636, 640, 432 N.E.2d 1213, 1217, relying on *Laughlin v. Hopkinson* (1920), 292 Ill. 80, 126 N.E. 591. In each of those cases, however, the court concluded that the defendant's fraud was sufficiently aggravated to justify an award of punitive damages. (104 Ill. App. 3d 636, 640-41, 432 N.E.2d 1213, 1217.) Plaintiff and McGinley's fraud against Joslyn, while sufficient to support an action for damages, does not possess any aggravated circumstances to justify an additional recovery. We note that Joslyn alleges that plaintiff and McGinley are guilty of conspiracy, an aggravated circumstance. The trial court did not find any conspiracy in this case and, after reviewing the record, we cannot say that its decision was against the manifest weight of the evidence. We hold that the trial court did not abuse its discretion in denying punitive damages to Joslyn.

D

Joslyn contends that the trial court erred in denying it compensatory and punitive damages, attorney fees and costs under the Illinois Consumer Fraud and Deceptive Business Practices Act (the Act). (Ill. Rev. Stat. 1983, ch. 121½, par. 261 *et seq.*) The act is regulatory and remedial, intended to curb a variety of fraudulent abuses and to provide a remedy to persons thereby injured. Its purpose is to protect Illinois consumers, borrowers and businessmen against fraud, unfair

methods of competition and other unfair and deceptive business practices. *Frahm v. Urkovich* (1983), 113 Ill. App. 3d 580, 584, 447 N.E.2d 1007, 1010, quoting *Scott v. Association for Childbirth at Home, International* (1981), 88 Ill. 2d 279, 288, 430 N.E.2d 1012, 1017.

■■ We have held, however, that liability under the Act is not completely open-ended. Rather, the Act was "intended to reach practices of the type which affect consumers generally and is not available as an additional remedy to redress a purely private wrong." (*Frahm v. Vrkovich* (1983), 113 Ill. App. 3d 580, 585-86, 447 N.E.2d 1007, 1011.) Joslyn bases its claims on a purely private wrong. We hold, therefore, that the trial court did not abuse its discretion in denying statutory fraud damages to Joslyn.

In sum, we uphold the trial court's findings and conclusions as to Joslyn's fraud damages. For the aforementioned reasons, however, we increase the amount of Joslyn's damages from $35,170 to $46,192. 107 Ill. 2d R. 366(a)(5).

### III

McGinley next raises several issues concerning plaintiff. McGinley contends that the trial court erred in (A) finding that he was to receive half of the profits of the Joslyn security project, (B) allowing plaintiff to deduct its attorney fees from the profits before computing his share, and (C) denying him prejudgment interest on his share of the judgment against Joslyn.

### A

■■ McGinley first contends that the trial court erred in finding that he was to receive half of the profits from the Joslyn security project. Rather, McGinley argues that he and plaintiff agreed that he would receive a salary of $27 per hour as his compensation. The trial court found, however, that McGinley and plaintiff verbally agreed to a 50% division of the profits. After reviewing the record, we cannot say that its finding was against the manifest weight of the evidence.

### B

McGinley next contends that the trial court erred in allowing plaintiff to deduct its attorney fees from the profits before computing his share. Plaintiff contends that the trial court erred in reducing its award of attorney fees.

■■ ■ We note at the outset that plaintiff assumes that the trial court found it and McGinley to be partners. Plaintiff bases this assumption on the court's finding that they agreed to share the profits

from the Joslyn security project. Plaintiff and McGinley's relationship was, rather, a joint venture, which is still governed by the legal rules applicable to partnerships. (*Ruskin v. Rodgers* (1979), 79 Ill. App. 3d 941, 949-50, 399 N.E.2d 623, 629-30.) Our supreme court has held that where a partnership was sued after dissolution, a partner can properly charge to the partnership his expenses for the costs and attorney fees in defending the action, if the expenses were reasonable, necessary and for the benefit of the firm. *Brownell v. Steere* (1889), 128 Ill. 209, 214, 21 N.E. 3, 4.

■■■ Applying this principle to the instant case, we conclude that plaintiff cannot recover attorney fees. Plaintiff argued that it is entitled to attorney fees and costs because it litigated the present action to obtain, for the benefit of it and McGinley, the unpaid balance of its fees, for which it received judgment. McGinley, however, did not consent to plaintiff's bringing this action. Further, plaintiff not only sued Joslyn to recover the unpaid balance of its fees, but it also sued McGinley, seeking damages. Plaintiff brought this action for its own benefit. We will not require McGinley to share plaintiff's expenses.

■■■ Plaintiff invokes the "equitable fund" doctrine to justify its award of attorney fees out of the profits. The doctrine refers to a court's directing an allowance of attorney fees to be paid from a fund within the court's control, which one of the parties created and preserved by its legal action and which benefitted others similarly situated. *Board of Education of Community Unit School District No. 303 v. County Board of Kane* (1976), 35 Ill. App. 3d 684, 689-90, 342 N.E.2d 223, 227.

The award of fees under the doctrine is similar to an action in *quantum meruit*; the person seeking compensation has, by his or her actions, benefitted another and seeks payment for the value of the service performed. The rationale for awarding attorney fees to a plaintiff who brought the underlying suit is that, by bringing the suit, he or she has performed a service benefitting other class members. A court measures the reasonable value of a plaintiff's service by his or her expenses incurred on behalf of the class. (35 Ill. App. 3d 684, 690, 342 N.E.2d 223, 227, quoting *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.* (3rd Cir. 1973), 487 F.2d 161, 165.) Plaintiff argues that it incurred expenses in securing the judgment against Joslyn, which it shares with McGinley. McGinley, thus, should bear his proportionate expense in securing the fund.

■■■ The equitable fund doctrine should not apply to the case at bar. A plaintiff may not recover attorney fees under the doctrine when he or she knowingly renders the services for an unwilling recipient.

(*Tenney v. American Family Mutual Insurance Co.* (1984), 128 Ill. App. 3d 121, 124, 470 N.E.2d 6, 9.) The record here shows that McGinley has always been represented by his own attorney. McGinley's award of half of the profits was due entirely to his own litigation efforts. We will not require McGinley to compensate plaintiff for its attempt to deprive him of his share of the profits. We hold that it would be inequitable to apply the doctrine to the instant case. We vacate the trial court's award of attorney fees to plaintiff, paid out of the profits from the Joslyn project.

## C

■■■ McGinley lastly contends that the trial court erred in denying him prejudgment interest on his share of the judgment against Joslyn. Decisions concerning the award of prejudgment interest under section 2 of the Interest Act (Ill. Rev. Stat. 1983, ch. 17, par. 6402) are questions of fact, and we will not disturb their determination on review unless against the manifest weight of the evidence. (*Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 558, 437 N.E.2d 872, 883.) After reviewing the record, we cannot say that the trial court's decision was incorrect.

In sum, we affirm the trial court's (1) finding that plaintiff and McGinley are guilty of common law and constructive fraud, (2) judgment for plaintiff and McGinley on the unpaid contract balance of $59,038.18, (3) judgment for Joslyn on its common law and constructive fraud claims, but increased from $35,170 to $46,192, (4) denial of Joslyn's claims for punitive and statutory fraud damages, (5) finding that McGinley was to receive half of the profits from the Joslyn project, and (6) denial of McGinley's claim for prejudgment interest. We also vacate the trial court's award of attorney fees to plaintiff, paid out of the profits.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County, as modified by this opinion. We remand the cause to the trial court solely for the purpose of recalculating the parties' damages consistent with our modifications.

Affirmed as modified and remanded.

McMORROW, P.J., and LINN, J., concur.